## The Niagara Fire Insurance Company v. Henry DeGraff.

*Insurance of liquors.*—Spirituous liquors illegally kept for sale may, notwithstanding, be lawfully insured against destruction by fire. The risks insured against are not the consequences of illegal acts, but of accidents.

*Description of insured property.* Where an insurance was effected on "groceries," and there was evidence that the insurer was informed that alcohol and spirituous liquors constituted a part of the stock, it was held that whether they were included in the term "groceries" in the policy was a question of fact for the jury.

*Conditions in policy.* A policy of insurance against fire provided that the policy should be void if the premises were used for storing or keeping therein any articles included in certain classes of hazards annexed to the policy, "except as herein specially provided, or hereafter agreed to by [the insurers] in writing upon this policy." It was held that where a stock was insured under the general designation of "groceries," which included some of these hazardous articles, the insurance by this designation *did* specially provide for them "in writing upon the policy."

A clause in a fire policy which provided that, if gunpowder or other articles subject to legal restriction should be kept in greater quantities or in a different manner than was provided by law, the policy should be void, was held to have reference only to articles of an intrinsically dangerous nature as liable to cause injury accidentally or by carelessness, and not to refer to liquors, the traffic in which was made illegal by statute.

*Inconsistent instructions to the jury.* A judgment will not be reversed because inconsistent instructions were given to the jury, if those adverse to the plaintiff in error were all correct.

*Verdict against evidence.* The question whether the jury did not find against evidence or perversely, cannot be considered on writ of error.

*Heard November 3rd.   Decided December 5th.*

Error to Lenawee Circuit.

The plaintiffs in error insured DeGraff "against loss or damage by fire to the amount of $1,500, as follows: $500 on dry goods contained in the wood building occupied by assured; $200 on groceries; $100 on hardware; $100 on boots and shoes; $50 [on crockery; $50 on hats and caps; all contained in the wood store on south side of Main street, village of Palmyra; $500 on dwelling house." The policy provided that if the premises "shall be used for the purpose of carrying on therein any trade or occupation, or for storing or keeping therein any articles, goods or merchandise, denominated *hazardous* or *extra hazardous*, or *specially hazardous*, in the second class of the classes of hazards attached to this policy, except as herein specially provided for, or hereafter agreed to by this corporation, in writing upon this policy, from thenceforth, so long as the same shall be so used, this policy shall be of no force or effect." "Whenever gunpowder, or other article subject to legal restriction, shall be kept in said premises, in quantities greater than the law allows, or in a manner different from that prescribed by law, unless said use or keeping is specially provided for herein, this policy shall be null and void."

Attached to the policy was an enumeration of "*classes of hazards.*" In the second class were enumerated as follows:

*Hazardous No.* 2. China or earthenware, grocers' stocks, gum shellac, oil, provisions, *spirituous liquors*, sugars, sulphur, tallow, &c.

*Extra hazardous No.* 2. *Alcohol*, apothecaries stocks, &c.

There was no indorsement upon the policy, and no special provision in it, assenting in terms to the keeping by DeGraff of gunpowder, drugs and medicines, spirituous liquors or alcohol.

The action was brought to recover the insurance upon the goods, which had been destroyed by fire. By the bill

of exceptions settled in the case, it appears that on the trial it was proved on the part of the plaintiff, that at the time of the issuing of the policy, and from that time to the time of the fire, he was engaged in the business of a retail country store at Palmyra; that his stock consisted of dry goods, groceries, crockery, and hardware, boots and shoes, hats and caps, together with a small amount of drugs and medicines, consisting chiefly of pills, plasters, patent medicines, roots and barks. He also kept alcohol for sale to the amount of not exceeding a barrel, and also a few bottles of spirituous liquors sealed up in bottles, for sale at retail by the bottle.

The plaintiff also gave evidence tending to show, and which he claimed did show, that at the time he made application for the insurance he told the agent of the defendant who issued the policy, that he wanted an insurance on his stock of goods which he described; that he informed the agent, among other things, in answer to a question by him, that he kept alcohol and spirituous liquors as aforesaid; that said agent then drew up the application and that the plaintiff signed it; which statement was denied by the testimony of the agent, R. B. Robbins, who testified that he was not informed by the plaintiff that alcohol or spirituous liquors were kept for retail in said store.

For the defense the Judge was asked to charge the jury: That the articles of alcohol and spirituous liquors (since the Prohibitory Liquor Law, forbidding all persons from selling or keeping for sale spirituous or intoxicating liquors,) are not included in the term "groceries" as used in referring to goods kept for sale. The Judge refused so to charge, but charged the jury that that question was a question of fact for the jury. He also, at the request of the plaintiff, further charged, that by the conditions attached to the policy, the keeping of alcohol is no more prohibited than sugars, provisions or tallow, if it constitute a part of

an ordinary grocer's stock; that the enumeration of oils, gum shellac, provisions, sulphur, tallow, *alcohol*, &c., in the conditions attached to the policy, together with grocers' stocks, does not make it necessary to specify such things when an insurance is being taken on the stock itself, when they constitute a part thereof. In other words, the insurance of a stock of groceries is an insurance of everything commonly kept and sold under that head, and the insurer is apprised, by an application for insurance on groceries, that the insured keeps or may keep any and all of the articles commonly kept and sold under the denomination of groceries; otherwise an insurance on a stock of groceries would be an insurance conditioned to be void if certain prominent articles of groceries were kept: that if the articles above enumerated, or any others denominated hazardous or extra hazardous in the conditions, are commonly kept and sold as a part of a grocer's stock, then in insuring a stock of groceries, the hazard from keeping those articles is charged and paid for, and the risk thereon assumed by the insurer, whether the insurer was specially informed of those articles constituting a part of the stock or not, unless there was a concealment on the part of the insured.

The counsel for the plaintiff further requested the Judge to charge the jury, that the keeping of a small quantity of gunpowder for retail, as part of plaintiff's stock, would not render the policy void; which request was refused. The counsel for the plaintiff also further requested the Judge to charge the jury each of the following several propositions:

1. That the keeping of a small quantity of alcohol or alcoholic liquors for retail as a part of his stock would not render the insurance void.

2. That if the jury find that alcohol and alcoholic liquors, gunpowder, and drugs and medicines, in moderate quantities, for retail, usually constitute part of a stock of groceries in such a store as plaintiff's, the fact that plaintiff

so kept them as part of his stock would not render his policy void.

3. That if the jury find that the plaintiff, at the time of applying for his insurance, omitted to disclose the fact that he kept in his stock any of the articles above mentioned, that would not render his ·policy void unless he knew that the fact of keeping them would have a tendency either to prevent his getting the insurance or to make the rate of premium higher, and concealed the fact with fraudulent intent.

4. (If the Court should hold that the keeping of alcohol or alcoholic liquors for sale by plaintiff was illegal, and that the insurance thereof was on that account void — then) That the illegality of keeping such liquors would not affect the insurance upon the remaining portion of the stock.

5. That the provision in the policy against storing or keeping in the premises mentioned therein, certain hazardous articles therein referred to, is not to be construed as prohibiting the keeping of a small quantity of any of the articles which usually constitute a stock of groceries in a country store, where the storing or keeping of such articles is not the principal business to which the premises are devoted, but the same are only kept for retail as part of a general stock.

All of which requests were refused.    But the Judge did charge, at the request of the counsel for plaintiff, that whether the agent was actually informed by DeGraff that he kept a small quantity of alcohol and liquors sealed up in bottles as a part of his stock, as testified to by DeGraff, was a question of fact for the jury.

The Judge further, at the request of the counsel for the defendants, instructed the jury as follows:

1. That the keeping alcohol for sale in the store where the goods were kept was in violation of the conditions of the policy; and if the jury believe that alcohol was so kept

before and at the time of the fire, the plaintiff cannot recover.

2. That the keeping of drugs and medicines in the store where the goods were kept was in violation of the conditions of the policy; and if the jury believe that drugs and medicines were so kept before and at the time of the fire, the plaintiff cannot recover.

3. That the policy insuring specific articles under the different heads of dry goods, groceries, hardware, crockery, boots and shoes, hats and caps, authorizes the keeping of those prohibited articles only which come under these specific classes.

4. That the term 'groceries' applied to property insured as in this case, is not to be presumed to apply to any articles kept for an illegal purpose, or to operate as an express assent to a waiver of the conditions annexed to the policy.

5. That the conditions of the policy, as well as the conditions annexed to the policy, are by operation of law made express warranties, and any violation of them or any part of them, whether accompanied by fraud or not, renders the policy void, and the plaintiff cannot recover.

6. That this policy, insuring specific classes of articles, and not by its terms including the stock of a country store, does not authorize the keeping of any articles prohibited by the policy not included in any of those specific classes, because of their being usually kept in a country store.

7. That the provision of the policy, " Whenever gun-powder or any other article subject to legal restriction shall be kept in said premises in quantities greater than the law allows, or in a manner different from that prescribed by law, unless said use or keeping is specially provided for herein, this policy shall be null and void," prohibits the keeping of spirituous liquors or alcohol for sale contrary to the provisions of the Prohibitory Liquor

Law, and if the jury find they were so kept, the plaintiff cannot recover.

The jury returned a verdict for the plaintiff.

*C. A. Stacy* and *C. I. Walker* for plaintiff in error.

1. The Court is bound to construe the contract for the parties so as to give every part full effect. Neither the Court nor jury can make a contract for the parties.

2. The Court erred in refusing to charge that alcohol and spirituous liquors were not included in the term groceries since the Prohibitory Liquor Law.

No policy is to be presumed to include articles that are prohibited to be sold or kept:— 1 *Phil. on Ins.* 81 ; 15 *Gray*, 492.

Even if the policy expressly covered these articles, then insurance would be against the policy of our law, and the policy would be void.

Though the term groceries, before the Prohibitory Liquor Law, might be construed to include alcohol or liquors kept for sale, because the term was held by lexicographers to include it, or because customary to be kept, yet neither a definition founded on previous law, or custom arising from a knowledge of previous law, can control now. But here there was no proof of any such custom.

3. Conditions in a fire policy, no less than in a marine policy, not complied with, defeat the policy, whether material to the risk or not, or whether the non-compliance be with or without the act or privity of the assured:—

*Phil. on Ins.* 410; 6 *Cow.* 673; 6 *Wend.* 488, 494; 7 *Wend.* 72; *Ibid.* 270; 5 *Hill*, 193; 3 *Hill*, 501; 10 *Mich.* 279.

4. But it may be said that the charge of the Court was, after all, in our favor, upon these points. To this we say, the charges made by the Court contradicted those charges in our favor. The effect to the jury of the charge, by request of defendant in error, that the

enumeration of oil, sugar, alcohol, &c., in a grocer's stock does not make it necessary to specify those articles when insurance is being taken on a stock of groceries, but they are insured as a part thereof, was to neutralize the other charge, and destroy its effect.

The charge must be rational and consistent. If absurd, impossible or contradictory, the party aggrieved by it will be entitled to a new trial: — 3 *Graham on New Trials,* 800; 6 *Cow.* 482.

Such a charge would either be a nullity, or, if it. had any effect, would be calculated to mislead the jury. The jury must not be misled by the Court in any manner:— 18 *Maine,* 436.

Whether, therefore, they are induced to find a wrong verdict by a positive direction, or by being left to draw an erroneous conclusion from the proof, there is the same ground for a new trial: — 3 *Graham New Trials,* 774; 11 *Wend.* 83.

*A. L. Millerd, H. D. Condict* and *T. M. Cooley* for defendant in error:

1. The Judge was correct in holding that whether alcohol and spirituous liquors were included in the term *groceries* as insured ' was a question of fact.

The common understanding of those who enter into these contracts is to govern the construction of the words employed, and this understanding is to be submitted to the jury as a question of fact: — 4 *T. R.* 206; 2 *Johns.* 531; 7 *Johns.* 385; 7 *Cow.* 202; 2 *C. & P.* 525; 9 *Met.* 354; . 3 *Sandf.* 26; 8 *Wend.* 160; 10 *Exch.* 323; 11 *Exch.* 405; 5 *M. & W.* 535; *Ry. & M.* 75; 7 *Bing.* 787; 5 *B. & P.* 213; 3 *B. & Ad.* 728; 3 *M & G.* 759; 1 *Q. B.* 424; 2 *C. B.* 412; 3 *Camp.* 16; 3 *Esp.* 121; 3 *Johns.* 88.

The evidence adduced upon this point seems to have been entirely satisfactory to the jury, but in fact, we

apprehend, no evidence was necessary, as the ordinary meaning of the term *groceries* would include these articles :— *See Webster and other lexicographers ;* 6 *Wend.* 623.

But defendant's position was, that, though the term groceries had this extent before the liquor law, it cannot be so understood since the sale of alcohol is prohibited. To this we reply,

The question is simply as to the meaning of a word. We see nothing in the statute which undertakes to change definitions. The statute simply prohibits the sale of an article of groceries. The word embraces what it did before.

But the position of defendants is faulty, in that it asks the Court to determine *as matter of law* that the parties used the term *groceries* in a particular and restricted sense. Now we say this is not a question of law at all, but one of fact. To enable the jury to determine it, evidence was given. As a part of the evidence, it was shown that the insurers were informed when they made out the policy that alcohol constituted a part of the stock. The jury have passed upon the question as one of fact, and found that the term *groceries* was here used by the parties in its former and general sense.

Alcoholic liquors may still be insured notwithstanding the statute prohibits their sale. The statute does not make them any less *property* than they were before. They are subject to the incidents of property, protected as such :—1 *Gray,* 46.

And if the law will defend the owner's possession of the property, and compel compensation for its destruction, it certainly cannot be illegal for him to indemnify himself against accidental destruction, by insurance.

There is no analogy between the cases of marine insurance held void because the ventures were illegal, and the case of insurance on property the sale of which is prohibited.

A marine insurance on an unlawful voyage is void, either, *first*, because the purpose and object of the insurance are a violation of the law, or, *second*, because, the voyage being unlawful, the assured has no insurable interest.¹

To make the case of a fire insurance on property not allowed to be sold analogous to this, the insurance must be *against the consequences of a breach of the law.* If the policy were *conditioned* for an unlawful sale, and provided an indemnity against penalties and costs that might be 'imposed in consequence, it would be analogous, and clearly illegal.

This policy does not provide for a *sale* of the alcohol. A man might lawfully keep the article for his own use, and, having it, might insure it. If he made an illegal sale of it afterwards, this illegality would not defeat an insurance valid in its inception: —1 *Story,* 109 ; 3 *Harr.* 484.

The offense of *keeping for sale* was complete before the policy attached. The insurance therefore did not *induce* it. The policy could have had nothing to do with that breach of the law. It related only to plaintiff's lawful interest in the property, and could not be affected by any offense already committed. It is an established principle of marine insurance that a policy is never affected by a prior and distinct illegality: — *Duer on Ins.* 340, 362 ; 8 *T. R.* 562 ; 1 *B. & P.* 353 ; 13 *Pet.* 163 ; 11 *Wheat.* 258, 271, 275.

But even if the illegality of the trafic should be held to render the insurance of the prohibited articles void, it would not affect it as to the residue of the stock: —4 *Taunt.* 792 ; 1 *Stark.* 222 ; 6 *Taunt.* 498 ; 2 *Marsh.* 196 ; 4 *Rob.* 166.

2. Where one applies for an insurance on a stock of groceries, he thereby sufficiently apprises the insurer that he keeps, or may keep, as a part of that stock, the articles commonly constituting a grocer's stock : — 14 *Barb.* 383 ;

1 *Bosw.* 522; 17 *N. Y.* 194; 22 *N. Y.* 441; 17 *N. Y.* 200; 10 *Rich.* 209; 2 *Hall,* 589, 622.

3. It is a general principle, applicable to policies of insurance, that the stipulations inserted therein for the benefit of the insurers, shall be construed most strongly against them: — 1 *Sum.* 434; 5 *Ind.* 23; 32 *Penn.* 351.

This principle will apply to all the conditions of this policy in regard to hazardous articles. Whenever there can be any doubt upon the construction of any of them, the insured should have the benefit of that doubt. It was the duty of the insurers, when fully informed of the facts, to so frame the policy that plaintiff's stock should be effectually insured; and they cannot take advantage of defects in their own statements to defeat an insurance for which the plaintiff has in good faith paid, relying upon them to perfect the papers: — 17 *N. Y.* 194; 16 *B. Monr.* 258; 14 *Barb.* 383; 2 *Hall,* 689.

CAMPBELL J.:

Plaintiffs in error insured DeGraff upon his stock of goods, described in his application as a "stock of dry goods, groceries, &c.," dividing the risk into specific sums on dry goods, groceries, hardware and other things specifically mentioned. There was evidence tending to show that he had in his store a few bottles of spirituous liquors, and a barrel of alcohol. Alcohol was among the articles mentioned in the second class of hazards in the second sub-division of extra hazards. Grocers' stocks generally were in the first sub-division of the same class. Bottled spirituous liquors were not classed as extra hazardous, but were included in the first class of ordinary hazards in the second division of hazardous. There was evidence tending to show that the insurance agent who drew up the application was informed of the presence of the liquors and alcohol, which was however denied by the agent. The property being destroyed, a suit was brought on the policy,

and judgment was recovered. Error is brought on the rulings upon the trial. The points taken refer mostly to a clause in the policy which .declared that if the store should be used "for storing or keeping therein any articles, goods or merchandize, denominated hazardous, or extra hazardous, or specially hazardous, in the second class of the classes of hazards annexed to this policy, except as herein specially provided for, or hereafter agreed to by this corporation, in writing upon this policy, from thenceforth, so long as the same shall be so used, this policy shall be of no force or effect." There was a further clause annuling the policy whenever gunpowder or any other article subject to legal restriction should be kept in greater quantities or in a different manner than prescribed by law.

The Court below refused to charge, as requested, that since the passage of the Prohibitory Liquor Law, alcohol and spirituous liquors are not included in the term "groceries" as used in referring to goods kept for sale; and charged that the question whether they were so included was one of fact for the jury. To this exception is taken.

It was claimed on behalf of the plaintiffs in error, that if these liquors can be allowed to be included in a policy, the policy will be to all intents and purposes insuring an illegal traffic; and several cases were cited involving marine policies on unlawful voyages, and lottery insurances, which have been held void on that ground. These cases are not at all parallel, because they rest upon the fact, that in each instance, it is made a necessary condition of the policy that the illegal act shall be done. The ship being insured for a certain voyage, that voyage is the only one upon which the insurance would apply, and the underwriter becomes thus directly a party to an illegal act. So insuring a lottery ticket requires the lottery to be drawn in order to attach the insurance to the risk. If this policy were in express terms a policy insuring the party selling liquors against loss by fine or forfeiture, it would be quite

analogous. But this insurance attaches only to property, and the risks insured against are not the consequences of illegal acts, but of accident. Our statute does not in any way destroy or affect the right of property in spirituous liquors, or prevent title being transmitted, but renders sales unprofitable by preventing the vendor from availing himself of the ordinary advantages of a sale, and also affixes certain penalties: — *Hibbard v. People,* 4 *Mich.* 125; *Bagg v. Jerome,* 7 *Mich.* 145. If the owner sees fit to retain his property without selling it, or to transmit it into another State or country, he can do so. By insuring his property the insurance company have no concern with the use he may make of it, and as it is susceptible of lawful uses, no one can be held to contract concerning it in an illegal manner unless the contract itself is for a directly illegal purpose. Collateral contracts, in which no illegal design enters, are not affected by an illegal transaction with which they may be remotely connected. In the case of *The Ocean Insurance Co. v. Polleys,* 13 *Pet.* 157, an insurance upon a ship known by the insurance company to be liable to forfeiture under the registry laws of the United States, was held valid, and a recovery was permitted for a loss while sailing under papers known to be illegal. The case of *Armstrong v. Toler,* 11 *Wheat.* 258, is still stronger. It is difficult to preceive how public policy can be violated by an insurance of any kind of property recognized by law to exist.

The question then arises, whether the Court rightly left it to the jury to say, as a matter of fact, whether the term "groceries" included spirituous liquors and alcohol. That it may include them in the absence of such a statute is not denied; the recognized definitions embracing them clearly, so that it may be doubted whether it might not, in that case, require evidence of usage to exclude that meaning if such articles existed in an insured stock of groceries. See *New York Equitable Insurance Co. v. Lang-*

*don*, 6 *Wend.* 623. There was evidence before the jury in the case before us, that these things did in fact form a part of the stock, and evidence tending to show a knowledge of that fact by the agent. The statute does not prohibit the sale of all kinds of liquors, but, as to some, expressly recognizes the right in every one. Whatever may be the *presumption*, under our present statute, as to the extent of the term "groceries" — a question not raised in the case, and upon which, therefore, it would be improper to pass — we think the instruction asked was altogether too broad, in claiming that alcohol and other liquors could not possibly be included. The question was properly left to the jury.

If the jury found — as their verdict shows they must have done — that the term "groceries" included the liquors in question, then the other instructions complained of, which held that by insuring such a stock the liquors were embraced although extra hazardous, were clearly correct. By the use of a term including them they are "*specially provided for in writing on the policy.*" Insuring a class of goods includes what is usually contained in it, whether extra hazardous or not. See *Bryant v. Poughkeepsie Mutual Insurance Co.* 17 *N. Y.* 200; *Harper v. Albany Mutual Insurance Co.* 17 *N. Y.* 194; *Harper v. N. Y. City Insurance Co.* 22 *N. Y.* 441; *Delonguemare v. The Tradesmen's Insurance Co.* 2 *Hall,* 589. In these instructions the jury were directed to include the articles only if satisfied that they were commonly kept and sold as part of a grocer's stock. This qualification was sufficiently broad to prevent any improper inferences.

The clause of the policy vitiating it if gunpowder and other articles subject to legal restriction should be kept in greater quantities or in a different manner than is provided by law, was not pressed very strongly on the argument, and evidently refers only to articles of an intrinsically dangerous nature, as liable to cause injury accidentally or by

12 MICH.—J.

carelessness. It has no reference to any risks except such as render the property more likely to be destroyed. There are no statutory provisions concerning liquors analogous to the laws restricting the use of powder.

Our attention has been called to the fact, that the other charges given on the one side and refused on the other, are inconsistent with those complained of. So far as this is the case, however, they favored the plaintiffs in error, — those excepted to being the only ones which could damnify them. Had the verdict been for them, the discrepancies would have been more important in determining the rights of the other party. The question whether the jury did not find against evidence, or perversely, could only be presented in the Circuit Court.

The judgment should be affirmed, with costs.

MANNING J. concurred. CHRISTIANCY J. also concurred in the result.

MARTIN CH. J. was absent.