[Civ. No. 6824.   Third Dist.   Oct. 28, 1942.]

RICHARD FRICKE, Plaintiff, v. CLAYTON B. BRADEN, Respondent; RUSSELL R. INKS, Appellant.

J. J. Henderson for Appellant.

McLaughlin & McLaughlin and Brandenburger & White for Defendant and Respondent.

SCHOTTKY, J. pro tem.—On October 28, 1939, Paul Prom executed and delivered to appellant Russell R. Inks, a lease of "the grocery, liquor and bakery departments in the Super Market to be built by lessor on lots 82, 83 and 84 of Swanson Unit No. 1." Said lease provided further: "Lessee to have the exclusive right to sell the following: General stock of groceries; liquors, wines and beers; bakery goods, candies, tobacco, nuts and dried fruits in cello packages (not exclusive)." Said lease was not recorded until July 5, 1940.

On March 20, 1940, said Paul Prom executed and delivered to respondent Clayton B. Braden, a lease of:

"All of the south store-room of that certain building owned by the lessors and located on Lots 82, 83 and 84 of Swanson Unit No. 1 to the City of Sacramento, the central portion of said building being now occupied by the Riverside Market. Said store-room is known as No. 2719 Riverside Boulevard."

Said lease provided further:

"It is understood and agreed that said premises are being leased for the purpose of conducting therein a general drugstore business, and business customarily associated and connected therewith."

On July 12, 1940, respondent Richard Fricke commenced an action for declaratory relief, alleging in his complaint that he had purchased "lots 82, 83 and 84 of Swanson Unit No. 1 to the City of Sacramento, together with the buildings thereon, being No. 2719 Riverside Boulevard, and known as the Riverside Market;" that there had been assigned to him by the former owner of the property, two leases, one to the appellant Inks, and one to the respondent Braden; that a controversy had arisen between Fricke and said lessees as to their respective rights under said lease, both of said lessees claiming the right to sell liquors upon said premises; and said respondent prayed for a declaration of rights and duties of himself and said lessees under said leases.

Respondent Braden filed an answer in which he alleged

that he had the right to sell liquors upon said premises leased by him. Appellant Inks filed a cross-complaint, in which he claimed that under his lease he had the exclusive right to sell liquors on said properties, and that respondent Braden had no right to sell liquors on the part of the property leased by him, and appellant prayed for a judgment decreeing that he had the exclusive right to sell liquors in said building, and that respondent Braden be enjoined from selling liquors in any portion of said building.

The trial court found that it was not true that appellant Inks had the exclusive right to sell liquor in said building, and further found:

"That the portion of the building known and designated upon the plans (Plaintiff's Exhibit #3) as Drug Store, for the purpose of deciding the issues in this case, is not a part of that portion of the building designated by said plans as 'Market' and described in the lease of Russell R. Inks as Super Market. That defendant Russell R. Inks, never did and does not now occupy or claim tenancy to any part of the above described premises known as and called the Drug Store.

"The court finds that the plans and specifications which defendant Inks examined before the building was erected plainly indicated what part constituted the Super Market, and also indicated the Drug Store and Beauty Shop as separate parts of the building. That neither of the latter is within the Market or Super Market, and each has always been a distinct and separate store of said building both as a fact and architecturally, and said Market has always been designated by a sign indicating what part thereof constituted said Market.

"Defendant Inks has never had possession of any other part of said Market than that part he now occupies, and defendant Braden never had notice of any claim he made to the exclusive right to sell alcoholic liquors in the entire structure, including the Drug Store, until after said Braden had moved into said Drug Store, and has acquired his right to conduct said business.

"That there are no ambiguities or uncertainties in the terms and conditions of the respective leases Plaintiff's Exhibit #1 and #2 relative to the rights of the defendants to sell liquors in their respective parts of said building."

Judgment followed in accordance with said findings, and this appeal is by appellant Inks, from said judgment.

■ The principal contention advanced by appellant is that the trial court erred in sustaining respondents' objection to the introduction of parol evidence explaining the circumstances under which appellant's lease was made, and the meaning of the term "Super Market," as understood by the lessor and lessee at the time appellant's lease was executed.

It appears from the record that before the appellant Inks' lease was executed, said appellant, his brother, and Paul Prom (the former owner of the property), were on the lots where the building was to be constructed, and that the plans and specifications of said building were exhibited to appellant. The lease was then prepared by Paul Prom and signed by appellant. The plans, which were introduced in evidence, show a building having a frontage of 105 feet on Riverside Boulevard. According to the said plans, the north wing has a frontage of 25° feet and a depth of 27 feet, and has two stores, one of which is marked "Shoe Shop" and one marked "Beauty Parlor"; the central part of the building is designated "Market," and has a frontage of 63 feet and a depth of 70 feet; and the south wing is marked "Drug Store," and has a frontage of 17 feet and a depth of 48½ feet, and there are no doors between the part designated "Market" and the part designated "Drug Store."

In *Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221 [41 P. 876], the court said, at page 226:

"For the purpose of determining what the parties intended by the language used, it is competent to show not only the circumstances under which the contract was made, but also to prove that the parties intended and understood the language in the sense contended for; and for that purpose the conversation between and declarations of the parties during the negotiations at and before the time of the execution of the contract may be shown."

In *Pappadatos* v. *Market Street Building Corp.*, 130 Cal.App. 62 [19 P.2d 517], at page 65 the court said:

"As said in *Edward Barron Estate Co.* v. *Waterman*, 32 Cal.App. 171 [162 P. 410, 411]: 'The scope, purpose, and effect of the lease of course must be determined from a consideration of it as a whole rather than by a resort to any individual clause thereof (Civ. Code, § 1641). So construed the lease must be given such an interpretation as will make it effective in conformity with the intention of the parties (Civ. Code, § 1643); and if its terms are in any way am-

biguous or uncertain it must be interpreted in the sense in which the lessee believed at the time of making it that the lessor understood it (Civ. Code, § 1649); and if different constructions of its clauses may be otherwise equally proper, that construction must be given which will be most favorable to the party in whose favor the clauses in controversy were made (Code Civ. Proc., § 1864).' Furthermore, section 1654 of the Civil Code provides in part: '. . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party. . . .' "

We have read the record carefully and we are convinced that the court erred in refusing to permit appellant to show the conversations between, and the declarations of the parties during the negotiations at and before the time of the execution of the lease. It is apparent from the record that the meaning of the term "Super Market" was uncertain and ambiguous. In fact, the trial court judge at one point said:

"From that reading I presume that the building itself had not been erected so I am unable to tell from this whether the lease covered the entire Lots 82, 83 and 84 *or how much this super market covered*. These are all matters that undoubtedly the parties can enlighten the court on."

And at another point the trial judge said:

"This is a lease. . . . It doesn't point out what the super market is, whether that super market is the entire building or not. But it is 'in the super market to be built,' and I take it that probably that might refer to the building."

We have been unable to find a definition of the term "Super Market" in any dictionary, nor have we been able to find any decision in which it has been defined. The word "Super" is derived from the same Latin word, and means "over," "above." It is defined in Webster's New International Dictionary, second edition, as, "over and above; higher, as in quantity, quality or degree; more than, as in super essential, super-natural, or super-standard." The word "Market" is defined in the same dictionary as "a public place; or a large building where a market is held; a marketplace."

The lease from Paul Prom to appellant was of the "grocery, liquor and bakery departments in the Super Market to be built by lessor." The trial court in its final conclusion evidently was convinced that this clearly referred only to

that portion of the building designated on the plans as "Market," and that there was no uncertainty or ambiguity which would justify any parol testimony as to how said term was understood by the parties. The word "Super" and the word "Market," combined, certainly mean something more than the mere word "Market," and in our opinion it is more logical to conclude that the term "Super Market" was intended to mean the entire building, than to conclude that it meant only the portion marked "Market." ■ It is a matter of common knowledge that where a building is constructed as a trade center, such as this one was, it is the usual thing to have a number of separate businesses that do not compete with each other. ■ What the precise meaning of the term was, as understood by the parties in a given case, can best be ascertained by the conversations between, and the declarations of the parties at and before the time of the execution of the lease. We therefore conclude that the trial court erred in sustaining respondents' objections to the introduction of parol evidence explaining the circumstances under which appellant's lease was made, and the meaning of the term "Super Market" as understood by the lessor and lessee at the time appellant's lease was executed. While it may be true, as respondent Braden contends, that the evidence sustains the findings of the trial court, yet this ruling of the court prevented appellant from introducing evidence that was material to the issues.

As stated at the outset, the action was one for declaratory relief. One of the main questions involved was the meaning of the term "Super Market," as understood by the lessor and lessee. The determination of this question was necessary in order that there might be a proper declaration of the rights and duties of the parties. Appellant was entitled to show by parol evidence, if he could, that the term "Super Market" was intended to refer to the entire building, and that it was so understood by Prom and himself.

Several other claims of error made by appellant do not require discussion. The error hereinbefore referred to is sufficient to require a reversal of the judgment and a retrial of the action.

The judgment is reversed.

Thompson, J., and Adams, P. J., concurred.