[Civ. No. 18552.   First Dist., Div. One.   Feb. 1, 1960.]

PURITY STORES, LTD. (a Corporation), Appellant, v. LINDA MAR SHOPPING CENTER, INC. (a Corporation), Respondent.

Fred A. Watkins for Appellant.

Thomas B. Gallen for Respondent.

DUNIWAY, J.—Appeals from judgments by the court, sitting without a jury, in two separate actions which were consolidated for trial. In one, appellant seeks declaratory relief against respondent regarding the interpretation of a lease under which appellant is lessee and respondent is assignee of the lessor. In the other, respondent asked for forfeiture of the lease. The question is whether the court erred in holding that appellant violated the terms of the lease by selling beer on the leased premises. We find no error and affirm the judgments.

The lease is dated August 24, 1954, and is between Western Slope Land Corporation, as lessor, and Purity Stores, Ltd. (Purity), appellant, as lessee. When the lease was executed, Western was developing the Pedro Valley subdivision at Linda Mar, San Mateo County, and, as part of this subdivision, Linda Mar Shopping Center. The lease is for a 25-year term with options for renewal. On September 1, 1955, Western assigned its interest in the lease to respondent Linda Mar Shopping Center, Inc. (Linda Mar).

The lease provides for the rights and duties of the parties in some detail. Of its 24 paragraphs, three are pertinent to this appeal. Paragraph Fifth provides: "Lessor further

covenants and agrees to and with Lessee that Lessee shall have the exclusive right in Linda Mar Shopping Center to the sale of groceries, fruits, vegetables and meats, and that Lessee may also sell, but is not given the exclusive right so to do, other items normally stocked by Lessee in Lessee's other stores in San Mateo County.

"Attached hereto as Exhibit 'B' is a list of other items normally stocked by Lessee in Lessee's other stores in San Mateo County and which Lessee is given the non-exclusive right to sell. . . ."

The exhibit lists only nonfood items, and could not conceivably be construed to include beer, nor is it contended that it does.

In paragraph Twentieth, Purity "covenants and agrees that it will not use the demised premises, or permit the same to be used, for any purpose other than that expressed herein." And paragraph Thirteenth states, "In the event Lessee should be in default in the performance of any covenant, provision or agreement herein contained on its part to be kept and performed, and such default shall remain unremedied for a period of thirty (30) days after Lessor shall have given a notice of such default to Lessee, Lessor may, at its option, terminate this lease and agreement by giving written notice of such termination to Lessee. Lessee agrees to vacate the demised premises immediately following receipt of such termination notice, and to reimburse Lessor for any costs of repossession of said premises, incurred by Lessor, including reasonable attorney's fees."

From February, 1955, when the store was erected, until June, 1957, after the lease had been assigned to Linda Mar, Purity did not stock or sell beer in the shopping center store or in any of its other stores in San Mateo County. According to the testimony of John R. Nevin, president and general executive officer of Purity, this policy was due to the desire of the company not to lose the patronage of what its management considered to be a significant minority of its customers who strongly objected to the sale of beer in a food store. In 1956, however, a survey persuaded the management that this minority was insignificant in number, and in June, 1957, Purity introduced the sale of beer in most of its stores, including the one at Linda Mar Shopping Center.

When Linda Mar took over the shopping center in 1955 it was still undeveloped. Since that time 33 stores have been

put into the center, one of which sells hard liquors, wines and beers to the general public. This store was opened June 26, 1956. Purity did not then assert, and does not now assert, that the sale of beer by this store violates its exclusive right under paragraph Fifth of the lease.

Purity's sole contention is that the word "groceries" in paragraph Fifth of the lease includes "beer." The evidence offered (apart from the lease itself) is the testimony of Ross H. Chamberlain, president of Western, who negotiated the lease on its behalf, and John R. Nevin, at that time Purity's vice-president and treasurer, who represented Purity in these negotiations.

Mr. Chamberlain testified: "The reason we wanted the groceries in the area was so the people living in the area might be more conveniently served. I asked Purity Stores if they didn't want to specifically include beer in this thing, and they felt it was covered by the provisions of this paragraph Five. I recognise that this is a lower middle class neighborhood, and that beer is an important beverage item. . . . Purity . . . said if they ever carried beer in all the stores they would carry it there and it was all right with me."

Mr. Nevin testified: ". . . At some stage of the negotiations Mr. Chamberlain suggested that the company carry beer in the Linda Mar store because it was a remote area and he felt the residents of the area should have a place to buy beer. I told Mr. Chamberlain at the time it was company policy not to stock beer in the stores. Mr. Chamberlain suggested that policy might change in the future and that this matter should be covered by the terms of the lease. I told Mr. Chamberlain that in my opinion that paragraph Five of the lease would permit the company to carry beer inasmuch as beer was definitely a grocery item and universally accepted as being so. Beer is definitely considered a grocery item and stocked by nearly all food stores in California. . . . I have seen the reports of the State Board of Equalization and, as I recall, most recently it was over 90 per cent of the food stores in San Mateo County do stock beer. . . . Beer is definitely considered a food item in the grocery trade."

Linda Mar produced one witness, Mr. Kendree, its managing director. On cross-examination he testified that leases covering markets generally do include the right to sell beer, but that this is done by specific language, beer being listed as "beers" and hard liquors as "hard liquors." His opinion was based

upon his experience with leases which had involved the corporation which owned the shares of Linda Mar. In his "personal opinion," beer is not a food, and, based upon his experience, he would say that the industry does not regard beer as a food. When asked whether he was familiar with the opinion of the industry as to the matter, the witness, without answering directly, responded that, "as far as I am concerned," beer is not a food item, admitting that this was again his personal opinion.

The court found that Purity had violated the lease by selling beer on the premises, but noted that Linda Mar had no desire to enforce forfeiture if Purity would comply with the provisions of the lease. In its conclusions of law, the court stated that Linda Mar was entitled to a judgment forfeiting the lease, but that the forfeiture should be set aside upon the condition that Purity cease to sell beer on the premises and pay to Linda Mar the sums which otherwise would have accrued as rent under the terms of the lease. The court also concluded that Linda Mar was entitled to costs and the sum of $500 as attorney's fees, and to judgment in the suit for declaratory relief. Judgments were entered accordingly.

We agree with Purity that it cannot be said as a matter of law that the word "groceries" does not include beer, and that consequently parol evidence is admissible to determine the meaning of the word as used in this lease. Dictionaries define the word as "the commodities sold by grocers, as tea, spices, etc." (Webster's New International Dict., 2d ed., 1939.) The same dictionary defines "grocer" as "a dealer in tea, sugar, spices, coffee, fruits, and various other commodities, chiefly foodstuffs." It has been held that one can be properly described as a grocer, although he also sells liquors. (*McGurk* v. *Metropolitan Life Ins. Co.*, 56 Conn. 528 [16 A. 263, 1 L.R.A. 563].) It has also been held that it is a question of fact for the jury whether the word "groceries" in a fire insurance policy covers liquors. (*Niagara Fire Ins. Co.* v. *De Graff*, 12 Mich. 124.) Another court has said that the term sometimes includes bottled beer and wines. (*Private A.S. Realty Corp.* v. *Julian*, 214 App.Div. 628 [212 N.Y.S. 430].)

No case holds, nor could any court properly hold, that the term either includes or excludes beer as a matter of law.

We can take judicial notice that, since the days of the old-time grocery, with its open cracker barrel and "hot stove

league" there has been a great change, not only in packaging and merchandising methods, but also in the nature and variety of items carried by grocery stores. We might even take judicial notice that many modern stores selling groceries, such as those of Purity, are no longer called grocery stores, but supermarkets, and that they have within them various departments or sections, some of which sell groceries and may even be expressly labeled as "grocery departments." ▮▮▮ But we certainly cannot, by such judicial notice, determine that these parties intended, in this lease, that the word "groceries" includes or excludes beer. If beer, why not wine, and if wine, why not hard liquor?

▮▮▮ It follows that the court properly received parol evidence for the purpose of enabling it to arrive at a decision as to the parties' intent. (Civ. Code, § 1647; Code Civ. Proc., §§ 1856, 1860, 1861; *Bartel* v. *Associated Dental Supply Co.*, 114 Cal.App.2d 750 [251 P.2d 16]; *Barham* v. *Barham*, 33 Cal.2d 416 [202 P.2d 289].) Conversations between the parties during the negotiations were properly admissible for this purpose. (*Beneficial etc. Ins. Co.* v. *Kurt Hilke & Co.*, 46 Cal.2d 517 [297 P.2d 428]; *Kenney* v. *Los Feliz Investment Co., Ltd.*, 121 Cal.App. 378 [9 P.2d 225]; *Goodman* v. *Jonas*, 142 Cal.App.2d 775 [299 P.2d 424].) In *Fricke* v. *Braden*, 55 Cal.App.2d 266 [130 P.2d 727], it was held error to exclude extrinsic evidence as to the meaning of the term "super market." In *Pine Beach Inv. Corp.* v. *Columbia Amusement Co.*, 106 Va. 810 [56 S.E. 822], extrinsic evidence was held admissible to determine whether the right, given by lease, to conduct a "buffet" included the right to sell liquor.

▮▮▮ We do not agree with Purity, however, that the testimony of its two witnesses compels the conclusion, as a matter of law, that the word "groceries" does include "beer" in this lease. Strange to say, both parties, in their briefs, overlook one consequence of the construction of the lease claimed to be correct by Purity, namely, that if the word "groceries" in paragraph Fifth includes beer, then Purity would have "*the exclusive right* in Linda Mar Shopping Center to the sale of" beer (emphasis ours). Purity's counsel conceded, at the oral argument, that no such exclusive right is claimed by Purity. The conduct of the parties themselves shows that such an exclusive right was not intended. Purity made no protest when the liquor store opened and began to sell beer; that store has been an accepted member of Linda Mar Shop-

ping Center since June 26, 1956. Purity itself has invoked its exclusive rights, under paragraph Fifth, to exclude a delicatessen from the center, and to prevent this same liquor store from selling cold meats. ▮ Construction of a contract by the conduct of the parties who are bound by it, especially when no controversy has yet arisen, is evidence of its meaning. (Civ. Code, § 3535; *Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751 [128 P.2d 665]; *Woodbine* v. *Van Horn*, 29 Cal.2d 95 [173 P.2d 17]; *Doll* v. *Maravilas*, 82 Cal.App.2d 943 [187 P.2d 885]; *Hildebrand* v. *Stonecrest Corp.*, 174 Cal.App.2d 158 [344 P.2d 378].)

▮ There is nothing in the testimony of Purity's witnesses that compels the conclusion that it was to have the exclusive right to sell beer. The court could well construe their testimony to mean that Purity was on notice that it was not given the right to sell beer, that it then did not intend to sell beer, and that it was content with an informal assurance, not made binding in the written lease, that if it changed its mind, the lessor would let it sell beer.

In short, the evidence amply supports the judgments. What Purity is really asking is not that we construe the word "groceries" in paragraph Fifth to include beer, but that we insert in the lease a new provision, knowingly omitted, that Purity shall have a nonexclusive right to sell beer. This we cannot do. (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128 [48 P.2d 13]; *Tanner* v. *Title Ins. & Trust Co.*, 20 Cal.2d 814 [129 P.2d 383].)

Affirmed.

Bray, P. J., and Tobriner, J., concurred.