STATE OF CONNECTICUT *v.* JOHN HARRINGTON

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 10-14176

Argued November 29, 1965—decided July 1, 1966

*Irving S. Ribicoff,* of Hartford, with whom, on the brief, was *Louise H. Hunt,* of Hartford, for the appellant (defendant).

*John R. Fitzgerald,* assistant prosecuting attorney, with whom, on the brief, was *Eli L. Cramer,* prosecuting attorney, for the appellee (state).

KOSICKI, J. The defendant was convicted on four counts in an information charging him with the illegal operation of a promotional drawing, in violation of § 53-290, and from the sentence he has appealed. The statute reads as follows: "Lotteries prohibited; publication of promotional drawing. Any person, except a sponsoring organization holding a permit under the provisions of sections 7-170 to 7-186, inclusive, who sets up any lottery to raise and collect money or for the sale of any property or, by any kind of hazard, sells or disposes of any kind of property or sets up a notification to induce people to bring and deposit property to be disposed of in any such manner or to risk their money or credit for the purpose of any such sale or disposition, shall be fined not more than one hundred dollars or imprisoned not more than one year, provided nothing . . . in this chapter shall be construed to forbid the publication of an advertisement of, or the operation of or participation in, a promotional drawing for a prize or prizes, conducted for advertising purposes by any person, firm or corporation other than a retail grocer or retail grocery chain, wherein . . . members of the general public may participate without making any purchase or otherwise paying or risking credit, money, or any other tangible thing of value."

The facts found by the court have been stipulated or conceded or are undisputed. They may be sum-

marized as follows: The defendant is sales manager for First National Stores, Inc., hereinafter referred to as First National, which operates typically modern stores commonly known and described as supermarkets. The duties of the defendant include such stores of the corporation as are located in Connecticut and western Massachusetts. First National represents itself and is known as a supermarket chain. Each supermarket has self-service, check-out counters, attendants in the meat, fruit and vegetable departments, and stock boys. It sells for cash only, has no customer or delivery service and deals in a greatly expanded line of products, including perishables and various nonfood items. On or about October 26, 1964, the defendant, acting for First National, operated or participated in a promotional drawing for a prize or prizes, conducted for advertising purposes, wherein members of the general public did participate without making any purchase or otherwise paying or risking credit, money or other tangible thing of value. The promotional drawing occurred in First National stores at four different locations: On Pennsylvania Avenue in Niantic; in Groton; in the New London shopping center on route 95; and on Ocean Avenue in New London.

The sole issue involved in this case is whether First National (and the stores mentioned above) was "a retail grocer," or a "retail grocery chain," excluded from exemption under the provisions of § 53-290 and thus subject to the penal sanctions of that statute. Thus, the problem presented on appeal becomes, initially, one of definition.

We have consulted the memorandum of decision of the trial court for the purpose of clarifying the conclusions reached in the finding on the basic question of definition. The conclusions were that a

"grocer" is one who deals chiefly in foodstuffs; that the four stores here involved dealt chiefly in foodstuffs and, hence, were "grocery" stores; and that First National was a "retail grocery chain." In its memorandum of decision, the court, in arriving at its conclusions as stated, relied substantially, if not entirely, on dictionary definitions. The court said: "Webster's International Dictionary (3d Ed.) defines 'grocer' as 'a dealer in staple foodstuffs (as coffee, sugar, flour) and usually meats and other foods (as fruits, vegetable, dairy products), and many household supplies (as soaps, matches, paper napkins).' As defined by Webster's New Collegiate Dictionary (1960 Ed.), 'grocer' is 'a dealer in sugar, spices, coffee, fruits and other commodities, chiefly foodstuffs.'" See *McGurk* v. *Metropolitan Life Ins. Co.,* 56 Conn. 528, 537.

In elaboration of the summarized finding stated above, the following subordinate facts were found: First National operates 601 stores, of which 499 are supermarkets and the remainder are classified as "dry groceries." Of these, there are approximately ninety supermarkets in Connecticut, including the four stores here in question, and ten "dry grocery stores." A "dry grocery" is the original grocery store, handling staple foods, teas, coffees, butter, some canned items, dry beans, dry fruits, crackers, cookies and beverages. The four supermarkets under review sell, in addition to dry groceries, a full line of fresh meats, fruits, vegetables, dairy and bakery products, beer, tobacco and frozen foods. They also sell merchandise such as snow removal equipment, health and beauty aids, notions, household needs, utensils, magazines, records, kiddy books, toys, nylons, potted plants, plant supplies including seeds, various types of paper products such as household bags and wax paper, pyrex and plastic products, games, notepaper, various kinds of

foil, sanitary napkins, paper towels and napkins, toilet tissue, ironing board covers, artificial flowers, fun books, washing powders, delicatessen items including hot and cold cooked foods and foods cooked to order, picnic supplies such as paper cups, plates and straws, pet food and supplies, mops, kitchenware, boot parkers, floor mats, candies and chewing gum, wearing apparel such as socks, underwear and ties, soft drinks, books, cooking utensils, cleaning aids, stationery, glassware, gloves, automobile supplies, handkerchiefs, facial tissues, jigsaw puzzles, table covers, pens and pencils, paste and glue, razor blades, animal kingdom sets, cigarettes, dinnerware, pots and wool hats.

All of the supermarkets deal in the same general type of merchandise, described above, and employ the same merchandising methods. Each has a large floor area necessary to display the numerous items handled. The store located on Ocean Avenue is a "free standing store," a term applied to a building constructed for the single type of business conducted therein, and has no satellite stores such as may be found in a shopping center consisting of a group of several stores forming a shopping complex. Approximately 60 percent of the First National stores in Connecticut are free standing. Besides self-service, cash payment, and absence of delivery, the supermarkets, as distinguished from the First National dry grocery stores, advertise daily, with the heaviest part of the advertising in the latter part of the week. The prices advertised are available at the supermarkets only and are lower than in the First National dry grocery stores. The advertising is devoted mainly to food items and carries the slogan "New England's Largest Retailer of Fine Foods." The layout and operational usage of space does not differ appreciably among the four supermarkets. Although 33 percent of the shelving

area is devoted to nonfood items, 70 percent of the promotional space is set apart and used for such items. The promotional space is the most prominent area in terms of customer visibility and attention arresting and is used to display so-called impulse sales items, seasonal merchandise and goods offered at special values. All four stores have grocery beer permits. Of the total First National sales, 85 percent is in the consumable foodstuffs category, 1.75 percent in household items, 3.75 percent in cigarettes, and 9.75 percent in other nonfood articles.

Every item in each of the four stores is sold by competitors other than grocery stores or supermarkets. Shopping centers frequently run promotional drawings through merchants' associations composed of stores in the center. Supermarkets located in shopping centers are members and support the activities of such associations through payment of dues. Such participation in many cases is made obligatory by lease commitments. A supermarket located in a shopping center receives the benefit of the increased traffic generated by a promotional drawing which is denied a free standing supermarket. Promotional drawings tend to increase sales and maintain competition. They are financed by the operator's advertising budget, and if the money is not spent on promotional drawings it would be expended for other types of advertising.

The defendant made the following claims of law, all of which were overruled by the trial court: (1) The state failed to prove that First National was "a retail grocer or retail grocery chain"; (2) § 53-290 is invalid because of indefiniteness; (3) it is unconstitutional as being class legislation in violation of article first, § 1, of the constitution of Connecticut and the fourteenth amendment, § 1, of the

constitution of the United States; (4) the term "a retail grocer or retail grocery chain" does not include a supermarket; (5) this being a criminal prosecution, the rights of the defendant required a determination of the constitutional issue.

We have reviewed the facts at considerable length because, as we have already observed, the principal issue is whether a supermarket is a retail grocery store within the intendment of § 53-290. The case is one of first impression in Connecticut, and we have found no authority elsewhere which would be of direct and helpful guidance.

Language is a living thing. It does not remain fixed and unchangeable but must conform with the needs for human expression and communication at a given time and place. Words in common use may grow obsolete because their use becomes unnecessary or is no longer favored. The phrase "dry goods," for example, once had a definite meaning, easily understood, as descriptive of "textiles, ready-to-wear clothing, and notions as distinguished from other goods." Webster, Seventh New Collegiate Dictionary. And it necessarily followed that a dry goods store was a store where dry goods were sold. Today this phrase has nearly disappeared from current usage. Dry goods stores have given way to or been absorbed by department stores. "When a court is called on to give . . . [a word] a specific meaning in order to resolve a particular question of law, it is fundamental that the judicial construction relate to and be consistent with the context in which the word is found. *Kiska* v. *Skrensky,* 145 Conn. 28, 33 . . . . If the word to be interpreted is found in a legislative prescription, the overall purpose of the legislation is of particular relevance in arriving at the appropriate meaning." *Planning & Zoning Commission* v. *Synanon Founda-*

*tion, Inc.,* 153 Conn. 305, 309. " 'A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used. [Mr. Justice Holmes in] *Towne* v. *Eisner,* 245 U.S. 418, 425 . . . . ' " *Planning & Zoning Commission* v. *Synanon Foundation, Inc.,* supra, 310 n.1.

The original statute (Rev. 1949, § 8667, and its predecessors) prohibited not only lotteries but also all enterprises where chance and a prize were predominating elements even though the participants risked nothing; *State* v. *Dorau,* 124 Conn. 160 ("bank night") ; and it has been held that the acceptance and publication of advertising of such enterprises in a newspaper would violate the statute. *Herald Publishing Co.* v. *Bill,* 142 Conn. 53. In 1955, the legislature amended the statute to permit the publication of an advertisement for a promotional drawing if the drawing did not violate the law of the state where it was to be held. Sup. 1955, § 3306d. By Public Acts 1963, No. 516, the statute was further amended by eliminating from the sanctions of chapter 946 the operation of or participation in a promotional drawing for a prize or prizes, for advertising purposes, without purchase or risk by members of the general public, when the promotional drawing was to be conducted by any entity other than "a retail grocer or retail grocery chain."

The trial court reached the conclusion that a "grocer" is one who deals chiefly in foodstuffs and since the four stores here involved dealt chiefly in foodstuffs they were "grocery" stores and the First National was a "grocery chain." It further concluded that all supermarkets dealing mainly in foodstuffs were "retail grocers" within the terms of the statute and that the words "retail grocer or retail

grocery chain" were not ambiguous or indefinite, as claimed by the defendant. The prosecution reinforces its argument by pointing to the amendment in 1963, by the same legislature, of another statute, § 30-1, to define, in subdivision (21), "grocery store" as "a supermarket, food store, grocery store or delicatessen, primarily engaged in the retail sale" of foods as described therein.[1] The purpose of this act was to redefine and extend the privilege of acquiring a grocery store beer permit, under subsection (c) of § 30-20, to stores other than grocery stores.[2] Obviously, the legislature had the power to include certain types of outlets, resembling each other in their general operation and the kind of customers they served, and to exclude others either expressly or as not falling within the permissive provision. That is particularly true of legislation regulating liquor traffic, in which no one can engage except under the law's permission. What the law can prohibit it can uniformly regulate. See such cases as *State* v. *Zazzaro,* 128 Conn. 160, 165, 167 (credit extensions); *Francis* v. *Fitzpatrick,* 129 Conn. 619, 622 (classification); *Carroll* v. *Schwartz,* 127 Conn. 126, 128 (sales under cost); *Schwartz* v. *Kelly,* 140 Conn. 176, 179 (minimum resale price).

[1] "Sec. 30-1, subdiv. (21). 'GROCERY STORE' DEFINED: Section 30-1 is amended by adding subdivision (21) as follows: 'Grocery store' means any store commonly known as a supermarket, food store, grocery store or delicatessen, primarily engaged in the retail sale of all sorts of canned goods and dry goods such as tea, coffee, spices, sugar and flour, either packaged or in bulk, with or without fresh fruits, and vegetables, and with or without fresh, smoked and prepared meats, fish and poultry, except that no store primarily engaged in the retail sale of sea food; fruit and vegetables; candy, nuts, and confectioneries; dairy products; bakery products; or eggs and poultry shall be included in the definition of 'grocery store.' [Public Acts 1963, No. 274, § 1.]"

[2] "Sec. 30-20, subsec. (c). GROCERY STORE BEER PERMIT. A grocery store beer permit may be granted to any grocery store as defined in subdivision (21) of section 30-1 and shall allow the retail sale of beer in standard size containers not to be consumed on the premises. [Public Acts 1963, No. 274, § 2.]"

It is the further contention of the state that § 53-290 is a criminal statute prohibiting all lotteries except as exempted therein. In this, it is argued, the rationale of the foregoing cases, arising under the Liquor Control Act, would be peculiarly applicable because the enactment of § 53-290 was in the exercise of the police power of the state and promotional drawings are within its prohibitions as being against public policy which the legislature has determined (citing *Herald Publishing Co.* v. *Bill,* supra). As pointed out above, this rule no longer applies because of the 1963 amendment which exempts promotional drawings from the prohibitions of § 53-290 except in the case of a "retail grocer or retail grocery chain."

"It is true that legislature may define the terms used in their enactment and that the courts are bound to accept their definitions. *First Federal Savings & Loan Assn.* v. *Connelly,* 142 Conn. 483, 489 . . . and cases cited. This rule extends only to the meaning to be given by the courts, in construing a statute, to the terms defined. It does not prevent a court, when the constitutionality of the statute is attacked, from examining a definition to see whether it logically and fairly describes what it purports to define. To take an extreme case, it is questionable whether a legislature could, by defining as a dog an animal having the components of a horse, subject the owner of a horse to the dog licensing statute." *United Interchange, Inc.* v. *Spellacy,* 144 Conn. 647, 654.

The criterion adopted by the trial court in concluding that a supermarket and a grocery store were synonymous was based on the premise that both were engaged chiefly in the retail sale of foodstuffs. No differentiation was made, either in dollar or sales volume, between the various kinds of edible

products, such as fresh and frozen meats, fish, dairy foods and the like, which ordinarily, by judicial or dictionary definition, would not be classifiable as groceries. See such cases as *Kroblin Refrigerated Xpress, Inc.* v. *United States,* 197 F. Sup. 39, 43; *Scott Truck Line, Inc.* v. *United States,* 163 F. Sup. 118, 121; *Darby* v. *Pennsylvania Public Utility Commission,* 189 Pa. Super. 312, 315. It is a fact of common observation that some stores limit their operations to the retail selling of meats, fish, dairy or bakery products, thus dealing exclusively in foodstuffs; yet it would be patently inaccurate to describe them as grocery stores.

In its brief, the prosecution bases its claim as to the correct construction of the statute on the representation that the 1963 session of the General Assembly excluded grocery stores from participation in or operation of promotional drawings only because of the pressure exerted by the Connecticut Food Stores Association, which feared the use of such a competitive weapon by a large chain store corporation against individually owned grocery stores. See Hearings before the Joint Standing Committee of General Law, Pt. 3, 1963 Sess., pp. 1021-29. Our Supreme Court has held without exception that such statements at legislative hearings are not admissible in the interpretation of a legislative act. *Baker* v. *Norwalk,* 152 Conn. 312, 316, citing *Litchfield* v. *Bridgeport,* 103 Conn. 565, 573, *Peck* v. *Fanion,* 124 Conn. 549, 553, and *State ex rel. Pettigrew* v. *Thompson,* 135 Conn. 228, 233.

The defendant places his main emphasis on the claim that a supermarket, neither by definition, purpose and methods of doing business nor in the understanding of and general acceptance by the public, is the equivalent of a grocery store. See, for example, *Fricke* v. *Braden,* 55 Cal. App. 2d 266, 271;

*Hildebrand* v. *Stonecrest Corporation,* 174 Cal. App. 2d 158, 168. Among the easily recognized differences are the following: self-service, cash payment, no deliveries, the great variety of nonfood merchandise regularly carried, and the large advertising and promotional efforts which are necessary to produce an increasing volume of sales and thus reduce unit costs to the purchaser. "It is a matter of common knowledge that most present day 'supermarkets' and 'food markets' resemble small department stores in relation to the articles sold therein. *Rosen* v. *Pulstilnik,* 204 N.Y.S.2d 221, 223." 40A Words & Phrases 334 (Perm. Ed.). "Webster's New World Dictionary defines supermarket as 'A large food store or market in which shoppers serve themselves from open shelves, and pay for their purchases at the exit' [citing *Rosen* v. *Pustilnik,* supra]." *Lilac Variety, Inc.* v. *Dallas Texas Co.,* 383 S.W.2d 193, 196 (Tex. Civ. App.).

The statute before us, § 53-290, is penal and must be strictly construed. *State* v. *Weber,* 121 Conn. 160, 162; *State* v. *Parker,* 112 Conn. 39, 46; *State* v. *Penner,* 85 Conn. 481, 484; *Tracy* v. *New York, N.H. & H.R. Co.,* 82 Conn. 1, 5; *Dennis* v. *Shaw,* 137 Conn. 450, 453. "The dividing line between what is lawful and unlawful cannot be left to conjecture." *Connally* v. *General Construction Co.,* 269 U.S. 385, 393. "Every man should be able to know with certainty when he is committing a crime." *United States* v. *Reese,* 92 U.S. 214, 220; *State* v. *Penniman,* 224 La. 95. The statute here does not exclude from the impact of its punitive measures all stores dealing with the same kinds of foodstuffs as the four supermarkets which, through the sales manager, have been subject to this prosecution. It does, however, exempt from its penal provisions every person or corporation other than a retail grocer or retail grocery chain. In 1963, when § 53-290 was amended,

the word "supermarket" had already acquired a popular and comprehended meaning. Had the legislative purpose been to deny a supermarket the broad exemption provided by the amendment, it could have been so stated. "[W]ords and phrases shall be construed according to the commonly approved usage of the language." General Statutes § 1-1. If the legislature had intended to include all stores dealing mainly in foodstuffs, it could easily have said so. We cannot speculate as to what the legislative intent may have been and try to effectuate it. Neither can we enlarge upon the definition or, by a process of interpretation, amend the statute. That is a legislative function. *Danbury* v. *Corbett,* 139 Conn. 379, 384, and cases cited. In our opinion, the court erred in its ultimate conclusion that the defendant was guilty of the crimes charged beyond a reasonable doubt. In view of the foregoing, it becomes unnecessary to consider the remaining assignments of error.

There is error, the judgment is set aside, and the case is remanded with direction to render judgment that the defendant is not guilty and ordering that he be discharged.

In this opinion KINMONTH and LEVINE, Js., concurred.