## SMILEY v. KANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 13. Argued October 20, 21, 1904.—Decided February 20, 1905.

This court will not inquire whether the finding of the jury in the state court is against the evidence; it will take the facts as found and consider only whether the state statute involved is violative of the Federal Constitution.

The power in the state court to determine the meaning of a state statute carries with it the power to prescribe its extent and limitations as well as the method by which they shall be determined.

Where the highest court of a State has held that the acts of a person con--victed of violating a state statute defining and prohibiting trusts were clearly within both the statute and the police power of the State, and that the statute can be sustained as a prohibition of those acts irrespective of the question whether its language was broad enough to include acts beyond legislative control, this court will accept such construction although the state court may have ascertained the meaning, scope and validity of the statute by pursuing a rule of construction different from that recognized by this court.

While there is a certain freedom of contract which the States cannot destroy by legislative enactment, in pursuance whereof parties may seek to further their business interests, the police power of the States extends to, and may prohibit a secret arrangement by which, under penalties, and without any merging of interests through partnership or incorporation an apparently existing competition among all the dealers in a community in one of the necessaries of life is substantially destroyed.

The act of the legislature of Kansas of March 8, 1897, defining and prohibiting trusts, is not in conflict with the Fourteenth Amendment to the Federal Constitution as to a person convicted thereunder of combining with others to pool and fix the price, divide the net earnings and prevent competition in the purchase and sale of grain.

ON March 8, 1897, the legislature of Kansas passed an act, the first section of which is as follows:

"SEC. 1. A trust is a combination of capital, skill, or acts, by two or more persons, firms, corporations, or associations of persons, or either two or more of them, for either, any or all of the following purposes: First.—To create or carry out restrictions in trade or commerce or aids to commerce, or to

carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this State. Second.—To increase or reduce the price of merchandise, produce or commodities, or to control the cost or rates of insurance. Third.—To prevent competition in the manufacture, making, transportation, sale or purchase of merchandise, produce or commodities, or to prevent competition in aids to commerce. Fourth.—To fix any standard or figure, whereby its price to the public shall be, in any manner, controlled or established, any article or commodity of merchandise, produce of commerce intended for sale, use or consumption in this State. Fifth.—To make or enter into, or execute or carry out any contract, obligation or agreement of any kind or description by which they shall bind or have to bind themselves not to sell, manufacture, dispose of or transport any article or commodity, or article of trade, use, merchandise, commerce or consumption below a common standard figure or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graded figure, or by which they shall in any manner establish or settle the price of any article or commodity or transportation between them or themselves and others, to preclude a free and unrestricted competition among themselves or others in transportation, sale or manufacture of any such article or commodity, or by which they shall agree to pool, combine or unite any interest they may have in connection with the manufacture, sale or transportation of any such article or commodity, that its price may in any manner be affected. And any such combinations are hereby declared to be against public policy, unlawful and void." Laws of Kansas, 1897, p. 481.

Subsequent sections prescribe penalties, and provide procedure for enforcing the act. On September 27, 1901, the county attorney filed in the District Court of Rush County, Kansas, an information charging that the defendant did, on November 20, 1900, "then and there unlawfully enter into an agreement, contract and combination, in the county of Rush

and the State of Kansas, with divers and sundry persons, partnerships, companies and corporations of grain dealers and grain buyers in the town of Bison, in the said county and State aforesaid, to wit, Humburg & Ahrens, the La Crosse Lumber & Grain. Company, the Bison Milling Company and George Weicken, who were at the said time and place competitive grain dealers and buyers, to pool and fix the price the said grain dealers and buyers should pay for grain at the said place, and to divide between them the net earnings of the said grain dealers and buyers, and to prevent competition in the purchase and sale of grain among the said dealers and buyers." A trial was had, the defendant was found guilty and sentenced to pay a fine of $500, and to imprisonment in the county jail for three months. On appeal to the Supreme Court of the State the judgment was affirmed. 65 Kansas, 240. Whereupon this writ of error was sued out.

*Mr. H. Whiteside* for plaintiff in error:

The act of 1897 is unconstitutional and void.

Section one goes entirely too far and is an unwarranted attempt upon the part of the legislature to limit the rights of the individual in the matter of contracting and dealing with his fellow men. The liberty to contract is as much protected by the constitutional provisions above referred to as is the liberty of person, and any attempt to abridge or limit that right will be held void, unless such abridgement or limitation is necessary to preserve the peace and order of the community or the life, liberty and morals of individuals, in which cases it is held to be the proper exercise of the police power of the State. 2 Eddy on Combinations, §§ 679, 905; *Niagara Fire Ins. Co.* v. *Cornell*, 115 Fed. Rep. 816; *Re Grice*, 79 Fed. Rep. 627.

The United States Constitution confers upon Congress, in express terms, the power to regulate commerce with foreign nations and among the several States and with the Indian tribes. So that while Congress has that power it does not

follow that a state legislature has the same power.  *Addyston Pipe & Steel Co.* v. *United States,* 175 U. S. 211, 228.

One Congress for the nation is a very different proposition from 45 separate legislatures, each local in its power, and generally hasty in its action.

The only power which a state legislature has to make any law which would impair the right to make any contract upon any subject is such as it possesses under the general police power of the State, which can only be exercised in matters which affect the peace and order of the community or the life, health and morals of individuals.  So that the fact that the Federal Anti Trust Law has been held constitutional is no argument in favor of the constitutionality of the Kansas statute.  But the two statutes are very dissimilar.  See the cases cited in dissenting opinion of Justice Pollock of the State Supreme Court in this case.

The unconstitutionality of the act in question should not be protected by a revolutionary mode of construction.  It was contrary to the holdings of the Supreme Court of Kansas until this case was passed on, and is against the great weight of authority generally.

When a statute is partly invalid the rule is that the rest cannot be upheld if the parts are mutually connected with and dependent on each other.  See opinion Brewer, J., in 28 Kansas 457; *Warren* v. *Mayor,* 2 Gray (Mass.), 84; *Slauson* v. *Racine,* 13 Wisconsin, 398; *Meshmeier* v. *The State,* 11 Indiana, 482; *McCluskey* v. *Cromwell,* 11 N. Y. 601.

The legislature passed an entire statute on the supposition that it is valid as a whole and it cannot be interpreted on any other theory.

Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. Courts cannot correct supposed errors, omissions or defects in legislation or vary by construction contracts of parties.

The office of interpretation is to bring sense out of the words used, and not to bring a sense into them. Peiber's Political and Legal Hermeneutics, 87; 2 Reuth Inst., ch. 7, § 2; Story on Const. § 392; *Purdy* v. *People*, 4 Hill, 384; *Waller* v. *Harris*, 20 Wend. 562; *Newell* v. *People*, 7 N. Y. 97; *Hyatt* v. *Taylor*, 42 N. Y. 258; *Johnson* v. *H. R. R. R. Co.*, 49 N. Y. 455; *Alexander* v. *Worthington*, 5 Maryland, 485; Sutherland's Stat. Con. §§ 175, 237, and cases cited; *United States* v. *Harris*, 106 U. S. 629; *Encking* v. *Simmons*, 28 Wisconsin, 272; *State* v. *Lovell*, 23 Iowa, 304; *Woodbury* v. *Berry*, 18 Ohio St. 456; *Dudley* v. *Reynolds*, 1 Kansas, 285; *Fitzpatrick* v. *Gebhart*, 7 Kansas, 35; *Ayers* v. *Fiego County*, 37 Kansas, 240; *State* v. *Chapman*, 5 Pac. Rep. 708.

It is well known that the Federal Courts will not always follow state court constructions. *Burgess* v. *Seligman*, 107 U. S. 20; *B. & O. R. R.* v. *Baugh*, 149 U. S. 368; *Yick Wo.* v *Hopkins*, 118 U. S. 356; *Railroad & Telephone Co.* v. *Board of Equalizers*, 85 Fed. Rep. 302; *Neal* v. *Delaware*, 103 U. S. 370; *Ex parte Virginia*, 100 U. S. 339; *Henderson* v. *Mayor*, 92 U. S. 259; *N. Y. Cen. R. R.* v. *Lockwood*, 84 U. S. 17; *Myrick* v. *Mich. Cen. R. R.*, 107 U. S. 102; *M., K. & T. R. R. Co.* v. *Elliot*, 184 U. S. 531; *Rolla* v. *Holley*, 176 U. S. 408. They are disregarded in all matters of general law, or of great importance.

All agreements which may affect prices or commodities and the conduct of business are not unlawful and cannot be made so by legislatures. The law encourages and provides for combination and recognizes the economical truth that the coöperation of individuals is essential to the well being and the progress of society. *Jones* v. *Field*, 5 Florida, 510; *State* v. *Loomis*, 115 Missouri, 307; Eddy on Comb. § 262. Nor will the courts assume the purpose and effect of a combination to unduly raise prices. Such purpose must be shown affirmatively. *Shade Roller Co.* v. *Cushman*, 143 Massachusetts, 352; *Herriman* v. *Menzies*, 115 California, 16; *James* v. *Bowman*, 190 U. S. 127.

Courts should refrain from interfering with the conduct of

the affairs of individuals unless such conduct in some tangible
form threatens the welfare of the public. *Leslie* v. *Lorrilard
et al.*, 110 N. Y. 519. Neither are all combinations or con-
tracts that tend to suppress competition or fix prices, illegal.
*Matthews* v. *Associated Press*, 136 N. Y. 333; Eddy on Com-
binations, §§ 288, 332, and cases cited; *McCauley* v. *Turney*,
19 R. I. 255; *Boehm Mfg. Co.* v. *Hollis*, 54 Minnesota, 223;
*Richie* v. *People*, 155 Illinois, 98; *Hopkins* v. *United States*, 171
U. S. 578; *Anderson* v. *United States*, 171 U. S. 604.

At common law only when combinations became mo-
nopolies injurious to the public, and were actually injuring
the public, could they be denounced by indictment.

The conviction of plaintiff in error was without due process
of law. For definition of due process of law as involved in this
case, see *Dartmouth College Case*, 4 Wheat. 518; 10 Am. & Eng.
Ency. Law, 2d ed., 293; *Weimer* v. *Bunbury*, 30 Michigan, 201;
*Brown* v. *Commissioners*, 50 Mississippi, 468; *Re Ah Lee*, 5
Fed. Rep. 899; *Chicago &c. R. R. Co.* v. *Chicago*, 166 U. S. 266;
*Pennoyer* v. *Neff*, 95 U. S. 733; *Rees* v. *Watertown*, 19 Wall.
107; *Benton* v. *Platten*, 10 U. S. App. 657; Bouvier's Law
Dictionary; *Lowe* v. *Kansas*, 163 U. S. 81.

*Mr. D. R. Hite*, with whom *Mr. C. C. Coleman*, Attorney
General of the State of Kansas, and *Mr. H. J. Bone* were on
the brief, for defendant in error:

The combination to which plaintiff in error was a party
constituted an unlawful restraint of trade and the investiga-
tion as to the constitutionality of the statute will be confined
to his own grievance. *Waters-Pierce Oil Co.* v. *Texas*, 177
U. S. 24, 43; *Clark* v. *Kansas City*, 176 U. S. 114.

This combination fell within the police powers of the State.
Grain is a necessity and regulating dealings in it is for the public
protection and within the powers of the States. *Munn* v.
*Illinois*, 94 U. S. 113, 126; *Brass* v. *North Dakota*, 153 U. S.
391, 402. The rule applies alike to large and small combina-
tions. *Nor. Securities* v. *United States*, 193 U. S. 197, 339,

citing *Morris Run Coal Co. v. Barclay Coal Co.*, 68 Pa. St. 173, 186; see dissent of Shiras, J., *United States v. Trans-Missouri*, 58 Fed. Rep. 84.

The act as interpreted by the Kansas Supreme Court is not repugnant to the Federal Constitution. *United States v. Freight Association*, 166 U. S. 290, 322; *United States v. Addyston Pipe Co.*, 85 Fed. Rep. 271.

Combinations and not innocent contracts are covered by this statute. See Mr. Carter's argument, *Joint Traffic Case*, 171 U. S. 505, 515; and for definitions of combination see Bouvier, Century and Standard Dictionaries under "Combine" and "Trusts"; Spelling on Trusts and Monopolies. See authorities as exhaustively reviewed in opinion of the Chief Justice of the state court in this case. As to reasonable construction of the statute in the light of surrounding circumstances, see *United States v. Laws*, 163 U. S. 258; *Hawaii v. Mankichi*, 190 U. S. 197; *United States v. Freight Association*, 166 U. S. 290, 311; *United States v. Joint Traffic Association*, 171 U. S. 505; *Northern Securities v. United States*, 193 U. S. 197.

We conclude that the Supreme Court of Kansas properly construed the act in question by limiting its general language to acts and cases comprising unlawful combinations to restrain the State's domestic trade and commerce, and that, thus interpreted, the act is a valid exercise of the legislative power; that the plaintiff in error was convicted of being a party to a conspiracy to prevent full and free competition in the purchase of an article of prime necessity to human life, and, therefore, is guilty of an act within the constitutional competency of the State to punish.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The verdict of the jury settles all questions of fact.

In *Missouri, Kansas &c. Ry. Co. v. Haber*, 169 U. S. 613, 639, it is said: "Much was said at the bar about the finding of

the jury being against the evidence. We cannot enter upon such an inquiry. The facts must be taken as found by the jury, and this court can only consider whether the statute, as interpreted to the jury, was in violation of the Federal Constitution. *Chicago, Burlington & Quincy Railroad* v. *Chicago,* 166 U. S. 226, 242, 246."

We pass, therefore, to a consideration of the questions of law. It is contended that the act of 1897 is in conflict with the Fourteenth Amendment to the Federal Constitution, in that it unduly infringes the freedom of contract; that it is too broad and not sufficiently definite, and that while some things are denounced which may be within the police power of the State, yet its language reaches to and includes matters clearly beyond the limits of that power, and that there is no such separation or distinction between those within and those beyond as will enable the courts to declare one part invalid and another part void. We quote from the brief of counsel for plaintiff in error:

"Section one goes entirely too far and is an unwarranted attempt upon the part of the legislature to limit the rights of the individual in the matter of contracting and dealing with his fellow men. The liberty to contract is as much protected by the constitutional provisions above referred to as is the liberty of person, and any attempt to abridge or limit that right will be held void, unless such abridgement or limitation is necessary to preserve the peace and order of the community or the life, liberty and morals of individuals, in which cases it is held to be the proper exercise of the police power of the State."

It may be conceded for the purposes of this case that the language of the first section is broad enough to include acts beyond the police power of the State and the punishment of which would unduly infringe upon the freedom of contract. At any rate we shall not attempt to enter into any consideration of that question. The Supreme Court of the State held that the acts charged and proved against the defendant were

clearly within the terms of the statute, as well as within the police power of the State; and that the statute could be sustained as a prohibition of those acts irrespective of the question whether its language was broad enough to include acts and conduct which the legislature could not rightfully restrain.

It is well settled that in cases of this kind the interpretation placed by the highest court of the State upon its statutes is conclusive here. We accept the construction given to a state statute by that court. *St. L., I. M. & St. P. Ry. Co.* v. *Paul,* 173 U. S. 404, 408; *M., K. & T. Ry. Co.* v. *McCann,* 174 U. S. 580, 586; *Tullis* v. *L. E. & W. R. R. Co.,* 175 U. S. 348. Nor is it material that the state court ascertains the meaning and scope of the statute as well as its validity by pursuing a different rule of construction from what we recognize. It may be that the views of the Kansas court in respect to this matter are not in harmony with those expressed by us in *United States* v. *Reese,* 92 U. S. 214; *Trade-Mark Cases,* 100 U. S. 82; *United States* v. *Harris,* 106 U. S. 629, and *Baldwin* v. *Franks,* 120 U. S. 678. We shall not stop to consider that question nor the reconciliation of the supposed conflicting views suggested by the Chief Justice of the State. The power to determine the meaning of a statute carries with it the power to prescribe its extent and limitations as well as the method by which they shall be determined.

The transaction, as shown by the testimony, was practically this: There were four dealers in wheat in Bison, a small village in Rush County, situated on the Missouri Pacific Railroad. Three of them owned elevators and one a mill. They were competitors in the purchase of grain. The defendant was secretary of the State Grain Dealers' Association. He was not himself in the grain business nor interested in that of either of the four dealers. He came to Bison for the purpose of investigating some claims of Bison firms against the Missouri Pacific Railroad. While there he induced these dealers to enter into an arrangement by which if one bought and shipped more grain than the others that excess purchaser would pay

them a certain per cent. As security for such agreement the parties deposited their checks for $100 each with the defendant. They made to him weekly reports of the amount of grain purchased. If one had purchased more than his share he paid the defendant three cents a bushel for the excess, and that amount was then divided among the other dealers. Upon these facts, under appropriate instructions, the jury found the defendant guilty.

That the transaction was within the letter of the statute, in that it tended to prevent competition in the purchase of merchandise, is not open to doubt. It is also within the spirit of the statute. It imposed an unreasonable restraint upon competition. It is stated by counsel for plaintiff in error in his brief that not far from Bison were a number of other small towns, at which the principal commercial business was the buying and selling of wheat. But where there were four buyers, as in Bison, apparently competing, farmers nearer to Bison than to other villages, if not farmers more remote, would naturally seek that place in order to benefit by the competition. They would find an apparent competition, and yet each buyer was restrained by this contract from seeking to purchase more than his fourth of the wheat coming to the market, or if he purchased more, must necessarily in order to make his profit, buy his wheat at three cents a bushel less than what he might otherwise pay, that being the penalty for an excess purchase. It was not an open agreement in respect to price, nor one that enabled sellers to know in advance exactly what they could get for their wheat.

Undoubtedly there is a certain freedom of contract which cannot be destroyed by legislative enactment. In pursuance of that freedom parties may seek to further their business interests, and it may not be always easy to draw the line between those contracts which are beyond the reach of the police power and those which are subject to prohibition or restraint. But a secret arrangement, by which, under penalties, an apparently existing competition among all the dealers

in a community in one of the necessaries of life is substantially destroyed, without any merging of interests through partnership or incorporation, is one to which the police power extends. That is as far as we need to go in sustaining the judgment in this case. That is as far as the Supreme Court of the State went. If other transactions are presented, in which there is an absolute freedom of contract beyond the power of the legislature to restrain, which come within the letter of any of the clauses of this statute, the courts will undoubtedly exclude them from its operation. As said by the Supreme Court of the State concerning the defendant's criticism of the breadth of this statute (p. 247):

"He cannot be heard to object to the statute merely because it operates oppressively upon others. The hurt must be to himself. The case, under appellant's contention as to this point, is not a case of favoritism in the law. It is not a case of exclusion of classes who ought to have been included, the leaving out of which constitutes a denial of the equal protection of the law, but it is the opposite of that. It is a case of the inclusion of those who ought to have been excluded. Hence, unless appellant can show that he himself has been wrongfully included in the terms of the law, he can have no just ground of complaint. This is fundamental and decisively settled. *City of Kansas City* v. *Railway Co.*, 59 Kansas, 427, affirmed under the title *Clark* v. *Kansas City*, 176 U. S. 114; *Supervisors* v. *Stanley*, 105 U. S. 305, 311; *Pittsburg &c. R. Co.* v. *Montgomery*, 152 Indiana 1."

We see no error in the judgment of the Supreme Court of Kansas, and it is

*Affirmed.*