CITY OF DANBURY *v.* JOHN J. CORBETT ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued December 4, 1952—decided January 13, 1953

*Irving S. Ribicoff*, with whom, on the brief, was *Louise H. Hunt*, for the appellants (defendants).

*Rocco E. LaCava*, with whom, on the brief, was *Abram W. Spiro*, for the appellee (plaintiff).

BALDWIN, J. The plaintiff city brought this action against the defendants, seeking a declaratory judgment that the sale of alcoholic liquor in the grocery store of the defendant First National Stores, Inc., is in violation of the ordinances of the city, and an injunction restraining such sale. The court rendered judgment for the plaintiff and the defendants have appealed.

The parties entered into a stipulation of facts which may be stated briefly. In April, 1936, the city of Danbury legally adopted an amendment to § 1 of its zoning ordinance which added the following definitions: "(v) A 'Tavern' is a place where beer or

alcoholic liquor is sold under a tavern permit issued by the State Liquor Control Commission. (w) A 'Grill' is a place where beer or alcoholic liquor is sold under a restaurant permit issued by the State Liquor Control Commission. (x) A 'Hotel' is a place where beer or alcoholic liquor is sold under a hotel permit issued by the State Liquor Control Commission. (y) A 'Package Store' is a place where beer or alcoholic liquor is sold under a package store permit issued by the State Liquor Control Commission." Section 4 of the ordinance forbids, in a business zone, the erection or the use of a building or premises for a tavern, grill, hotel or package store if the premises are within 1000 feet of any other premises used for one of such purposes. The defendant First National Stores, hereinafter called First National, is in possession of a store at 333 Main Street in Danbury, and since March, 1941, has conducted a bona fide retail grocery business therein. The store is within 1000 feet of premises where there are operated, in one instance, a legally licensed package store and, in another, a legally licensed grill. On October 27, 1950, upon the application of the defendant Corbett, as permittee, and First National, as backer, the liquor control commission issued a "grocery store beer permit" for the sale of beer in the backer's store. The defendants have sold beer, claiming a right to do so by virtue of the permit. Their sales of beer total less than 1 per cent of the store's gross sales. The single question posed by this appeal is whether a grocery store in which beer is sold under a grocery store beer permit is a "package store" as that term is defined in the ordinance.

When the amendment to the ordinance was passed in April, 1936, the State Liquor Control Act pro-

vided for several classes of permits. Among these were "(c) (1) package store permit; (2) package store beer permit." General Statutes, Cum. Sup. 1935, § 1027c. While the statute required that nothing other than alcoholic and nonalcoholic liquor be sold in a package store, it did permit the sale of beer in a grocery store under a package store beer permit. Cum. Sup. 1935, § 1030c. Since by that statute the sale of beer in the grocery store in question would require a package store beer permit, the store would technically be a package store within the definition of the ordinance, and hence subject to the 1000-foot prohibition, if the statutory classification of permits had remained as it was when the amendment to the ordinance was passed. In 1945, however, the General Assembly added a new class of permit to those already provided for. The new permit was designated a "grocery store beer permit." Sup. 1945, § 622h(c)(3). A separate fee was prescribed for such a permit. § 631h(c)(3). This legislation created a new, separate and distinct class of permit. *Downer* v. *Liquor Control Commission,* 134 Conn. 555, 559, 59 A.2d 290. There is a marked difference between a package store selling alcoholic and nonalcoholic beverages exclusively and a grocery store where the sale of beer represents a very small percentage of the gross sales. The new classification was reasonable and logical and within the power of the legislature. See *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 675, 88 A.2d 388.

In 1947, the legislature again plainly indicated its intent to deal with the retail sale of beer in grocery stores in a separate manner when it amended § 1030c of the 1935 Cumulative Supplement by providing that "(c) a grocery store beer permit may be granted

to any store which is chiefly engaged in the sale of groceries and shall allow the retail sale of beer in standard sized containers not to be consumed on the premises." Sup. 1947, § 728i(c). This section is significantly entitled "Package store permits; grocery store beer permits." It appears in the same form in the Revision of 1949 as § 4242(c). When the defendants applied in 1950 for a permit to sell beer, they did not ask for a "package store beer permit." They applied for, and the commission issued to them, a new and distinct class of permit designated by statute as a "grocery store beer permit."

The defendants' rights must be determined upon the law as it stood when the permit was issued by the commission. *Newington* v. *Mazzoccoli,* 133 Conn. 146, 150, 48 A.2d 729; *Hart* v. *Board of Examiners,* 129 Conn. 128, 131, 26 A.2d 780. Their application was granted October 27, 1950, and presumably was filed shortly before that date. The city's claim that its rights should be determined by the ordinance and statutes of 1936 is untenable. The defendant store is not a package store under the ordinance because it is not "a place where beer or alcoholic liquor is sold under a package store permit issued by the State Liquor Control Commission."

The plaintiff contends that the definition in the ordinance includes the backer's premises. It argues that the framers of the ordinance intended that its definition of a package store as "a place where beer or alcoholic liquor is sold under a package store permit issued by the State Liquor Control Commission" would include "all types of package store permits, notwithstanding any different designations or classifications which might thereafter be made by the General Assembly or the Liquor Control Commis-

sion." When legislation contains, as this ordinance does, a specific definition of a package store, the courts are bound to accept that definition. *Fox* v. *Standard Oil Co.,* 294 U.S. 87, 95, 55 S. Ct. 333, 79 L. Ed. 780; *Robinson* v. *Rogers,* 237 N.Y. 467, 472, 143 N.E. 647; 2 Sutherland, Statutory Construction (3d Ed.), § 3002. It may have been the intent of the framers of the definition to cover this particular type of liquor outlet without regard to how future enactments of the General Assembly might describe or regulate it. However, in the face of plain language, the court cannot speculate as to what the intent may have been and try to effectuate it. It cannot enlarge upon the definition. *Mad River Co.* v. *Wolcott,* 137 Conn. 680, 688, 81 A.2d 119; *McManus* v. *Jarvis,* 128 Conn. 707, 711, 22 A.2d 857; 2 Sutherland, op. cit., p. 511. It cannot construe the ordinance to embrace something which obviously it does not. *McBoyle* v. *United States,* 283 U.S. 25, 27, 51 S. Ct. 340, 75 L. Ed. 816; *Franklin & P. Ry. Co.* v. *Shoemaker,* 156 Va. 619, 623, 159 S.E. 100; *Western Auto Transports, Inc.* v. *Cheyenne,* 57 Wyo. 351, 361, 118 P.2d 761. It cannot, by a process of interpretation, amend the ordinance. That is a legislative function. *Grace Hospital Society* v. *New Haven,* 119 Conn. 146, 154, 174 A. 411; *Dean Milk Co.* v. *Chicago,* 385 Ill. 565, 571, 53 N.E.2d 612.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion JENNINGS and O'SULLIVAN, Js., concurred.

INGLIS, J. (dissenting). The majority opinion concedes that the grocery store in question would have been a "package store," as defined by the Dan-

bury ordinance, prior to the enactment of the statute relating to package store permits in 1945. This concession obviously is correct. The statute in effect when the ordinance was adopted authorized package store permits of two classes. One of these was the unlimited package store permit, under which alcoholic and nonalcoholic liquor of all kinds might be sold in a store devoted exclusively to that business. The other was the so-called package store beer permit, under which beer only might be sold, and that only in grocery stores. General Statutes, Cum. Sup. 1935, §§ 1027c, 1030c. Both were provided for in the same subdivision of § 1027c, which lists the various classes of permits which may be issued. Both were described in the same section, § 1030c, under the title "Package store permit." They were identical in that they restricted the sale of liquor to that contained in sealed containers and not to be consumed on the premises. Both classes of permits were package store permits.

Nor can there be any doubt that the definition of a package store as contained in the ordinance includes all outlets which operate under either of the two classes. The ordinance reads: "A 'Package Store' is a place where beer or alcoholic liquor is sold under a package store permit." The words "beer" and "alcoholic liquor" are stated in the disjunctive. If it had been intended to restrict the phrase "package store permit" to a permit for the sale of all alcoholic liquors, there would have been no need to refer to beer. The fact that the sale of beer by itself was included clearly indicates that the phrase "package store permit" was intended to include package store beer permits. The business of selling beer as it is now carried on by First National could have been carried on only under a package store

beer permit. First National's store, therefore, would come within the definition of a package store as contained in the ordinance.

But, say the majority, all that has been changed by the legislation of 1945 and 1947, because that legislation has set up a new kind of permit, known as a grocery store beer permit, which is not a package store permit. I am unable to attribute such an effect to that legislation. In 1945 the General Assembly rewrote § 1027c, the section which listed the various kinds of permits. General Statutes, Sup. 1945, § 622h. In doing so, however, it still continued to group in a single subsection—subsection (c)—(1) a package store permit; (2) a package store beer permit; (3) a grocery store beer permit. These three kinds of permit are defined in § 728i of the 1947 Supplement to the General Statutes, which has remained unchanged, as follows: "(a) A package store permit shall allow the retail sale of alcoholic liquor not to be drunk on the premises, such sales to be made only in sealed bottles or other containers . . . . (b) a package store beer permit shall allow the retail sale of beer in standard sized containers not to be consumed on the premises; (c) a grocery store beer permit may be granted to any store which is chiefly engaged in the sale of groceries and shall allow the retail sale of beer in standard sized containers not to be consumed on the premises."

It is to be noted that all three of these permits restrict the sale of alcoholic liquor to liquor in sealed containers and not to be consumed on the premises. All of them, therefore, are, in essence, package store permits in just the same way as the two classes of permit defined in § 1030c were package store permits. Outlets operating under any of them might

well fall within the definition of a package store as contained in the ordinance. That aside, the important feature of the legislation of 1945 and 1947 is that the "grocery store beer permit" authorizes exactly the same kind of business as did the package store beer permit in § 1030c of 1935. In both cases the business which may be carried on under the permit is the sale of beer in grocery stores only. It is not a new kind of permit, as the majority opinion holds. The new permit which was added in 1945, and 1947, was the package store beer permit. That permit authorized the sale of beer in general stores other than grocery stores—something which had not been permitted before 1945. The permit which was called a package store beer permit in 1936 when the Danbury ordinance was adopted is now called a grocery store beer permit. The change is merely one of name. There is no change of substance. It is still a package store permit as that phrase is used in the ordinance. It follows that the outlet for beer now operated by First National falls within the definition of a package store and is prohibited by the ordinance.

In this opinion BROWN, C. J., concurred.