THE FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION
OF NEW HAVEN *v.* WILLIAM F. CONNELLY,
TAX COMMISSIONER

BALDWIN, WYNNE, DALY and PHILLIPS, Js.[1]

---

[1] By agreement of counsel the case was argued before and decided by four judges.

484

Argued May 10—decided June 21, 1955

*Charles M. Lyman* and *Edward F. Becker,* for the plaintiff.

*Louis Weinstein,* assistant attorney general, with whom were *Walter T. Faulkner,* assistant attorney general, and, on the brief, *John J. Bracken,* attorney general, for the defendant.

BALDWIN, J. The plaintiff is a corporation organized under the laws of the United States. 48 Stat. 132, as amended, 12 U.S.C. § 1464. It appealed to the Superior Court from an assessment by the defendant of an additional corporation business tax upon its net income. General Statutes, c. 91. Twenty-

nine other savings and loan associations, fourteen of which are corporations organized under the laws of the United States and fifteen under the laws of this state, are situated similarly to the plaintiff with respect to the assessment of an additional tax. The Superior Court has reserved the case for advice upon stipulated facts.

The Connecticut corporation business tax law imposed upon savings and loan associations, among other corporations doing business in this state, a tax of 3 per cent of net income derived from business in Connecticut. Cum. Sup. 1951, § 397b (as amended, Cum. Sup. 1953, § 883c). In arriving at net income, "all items deductible under the federal corporation net income tax law effective and in force on the last day of the income year," except, with respect to the case at bar, "interest paid during the income year," were deductible from "gross income," whether or not the taxpayer was required to pay a tax to the federal government. Cum. Sup. 1953, § 886c. The plaintiff's fiscal year ended on December 31, 1952. Before April 1, 1953, it filed its tax return for 1952 showing a tax due of $1836.47, which it paid. It claimed, under the heading "Other deductions authorized by law," $769,665.68 as properly deductible from gross income in arriving at net income. This sum included $648,149.07 for dividends paid its members. The defendant refused to allow this deduction and assessed an additional tax against the plaintiff of $18,878.13, with interest of $339.81. He took similar action against the twenty-nine other savings and loan associations.

Prior to January 1, 1952, the plaintiff had not claimed a deduction in its Connecticut tax return for dividends paid to its members. It had not been required to pay a federal income tax. Effective

January 1, 1952, the Congress amended the Internal Revenue Code so as to subject savings and loan associations such as the plaintiff to the federal income tax. Int. Rev. Code of 1939, § 104(a), as amended, 65 Stat. 491; see 3 CCH 1955 Stand. Fed. Tax Rep. ¶ 3408.001.[2] In determining net income subject to the federal tax, the code allowed the deduction from gross income of dividends paid by banking corporations. Int. Rev. Code of 1939, § 23(r)(1), added by 65 Stat. 491; 26 C. F. R. § 39.23 (r)-1 (1953). As dividends were deductible from gross income under the federal income tax law, the plaintiff took the same deduction in computing the state tax. Cum. Sup. 1953, § 886c.

At its regular session in 1953, the General Assembly redefined the term "interest paid," as contained in § 886c, to include "amounts paid to, or credited to the accounts of, depositors or holders of accounts as dividends on their deposits or withdrawable accounts" in mutual savings banks, co-operative banks, building and loan associations, and savings and loan associations, "if such amounts paid or credited are withdrawable on demand subject only to customary notice of intention to withdraw." Cum. Sup. 1953, § 896c.[3] This amendment became effective June 9, 1953, and by its terms was made to apply, retroactively, to all income years or

---

[2] This was accomplished by amending the definition of taxable banks to include such institutions as the plaintiff.

[3] "Sec. 896c. 'INTEREST PAID' DEFINED. Retroactively applied to all income years or periods ending on or after January 1, 1952, the words 'interest paid,' as used in this chapter, shall mean and include, in the case of mutual savings banks, cooperative banks, building and loan associations, and savings and loan associations, amounts paid to, or credited to the accounts of, depositors or holders of accounts as dividends on their deposits or withdrawable accounts, if such amounts paid or credited are withdrawable on demand subject only to customary notice of intention to withdraw. (Effective June 9, 1953.)"

periods ending on or after January 1, 1952. The United States treasury department has ruled that money paid to depositors in federal savings and loan associations is not interest but dividend income, so that returns showing information concerning such dividend income were required under § 148 of the Internal Revenue Code of 1939. I. T. 4045, 1951-1 Cum. Bull. 34. The amount of dividends payable to the plaintiff's depositors on January 30 and December 31, 1952, was determined by its directors on the assumption that these dividends would be deductible in computing net income under the Connecticut corporation business tax law.

The questions presented for our advice are set forth in a footnote.[4] They raise the basic issues (1) whether the legislature could define the term "interest paid" to include dividends paid or credited to depositors on deposits or withdrawable accounts

---

[4] "A. Is the retroactive application of Section 896c an invalid attempt to impose a retroactive tax in violation of the State and Federal Constitutions?

"B. Does said Section 896c apply to federal savings and loan associations, and if it does not, then is there an unlawful discrimination against the other types of institutions enumerated therein?

"C. Is the tax imposed by Chapter 91 invalid as constituting an unconstitutional discrimination among various types of corporations?

"D. Are federal savings and loan associations, including the plaintiff, exempt from the tax imposed by Chapter 91 as instrumentalities of the United States?

"E. Is Chapter 91, and in particular Section 896c, invalid as an unconstitutional delegation of legislative power by the General Assembly to the Congress of the United States?

"F. Without reference to the validity or effect of Section 896c, are the dividends paid to depositors by mutual savings banks, building and loan associations and like institutions of substantially the same nature and character as the interest payments made to depositors in banks operated by corporations with capital stock, so that a deduction for dividends should be denied because of the express denial of a deduction for interest paid?

"G. Is the Plaintiff entitled to any refund of tax, and if so, how is it to be computed?"

in savings and loan associations, and (2) whether § 896c is unconstitutional.

The plaintiff claims that such dividends are not in fact interest and cannot be taxed as such. When the Congress subjected savings and loan associations to a tax on their net income, it provided that the amount paid or credited as dividends on depositors' accounts could be deducted in determining net income. Int. Rev. Code of 1939, § 23(r)(1), added by 65 Stat. 491. At that time General Statutes, Cum. Sup. 1953, § 886c, allowed the same deductions as the federal law in computing net income under the Connecticut law except, among other exceptions not here pertinent, "interest paid during the income year." Savings and loan associations prior to the imposition of the federal income tax had never claimed dividends as a deduction in computing net income subject to the Connecticut tax. Consequently, to make it clear that the tax on dividends as part of net income continued, in spite of the provision exempting them from the federal income tax, the General Assembly enacted § 896c, redefining the term "interest paid" to include dividends paid on accounts in savings and loan associations. When legislation contains a specific definition of a word or term, courts must accept that definition in construing the legislation. *United Aircraft Corporation* v. *O'Connor,* 141 Conn. 530, 537, 107 A.2d 398; *Danbury* v. *Corbett,* 139 Conn. 379, 384, 94 A.2d 6; 2 Sutherland, Statutory Construction (3d Ed.) § 3002. Other courts accept the construction placed upon a statute by the highest court of the state in which the statute was enacted. *Smiley* v. *Kansas,* 196 U.S. 447, 455, 25 S. Ct. 289, 49 L. Ed. 546; 14 Am. Jur. 302, § 89.

The legislative intent of § 896c was to make clear

that amounts paid as dividends by savings and loan associations would continue to be subject to the Connecticut tax. The legislature has the power to choose the subject matter of taxation and to fix the method and extent of a tax, subject to certain limitations pertinent to this case which the plaintiff has raised and which will be considered later in this opinion. *Norwalk* v. *New Canaan,* 85 Conn. 119, 124, 81 A. 1027; *State* v. *Murphy,* 90 Conn. 662, 666, 98 A. 343; *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 198, 132 A. 561. If it chose to enact provisions, relating to the subject matter of the tax and the deductions to be allowed, different from those contained in federal income tax legislation, it had the power to do so.

The plaintiff claims that § 896c is retroactive legislation and violates the due process clauses of the federal and state constitutions. It asserts that it filed its tax return and paid the tax on the basis of the law in force at the time the tax was due and payable. When the plaintiff was brought under the federal income tax statute in 1952, the General Assembly was not in session. The regular session of 1953 offered the first opportunity it had for dealing with any change brought about by the action of the Congress. Furthermore, the effect of § 896c, as previously stated, was simply to clarify a provision of the Connecticut law. It imposed no new tax upon the plaintiff but simply required it to continue to pay a tax which, for the years prior to 1952, it had been paying regularly. The section did no more than remove a possible claim for a deduction which the plaintiff had not theretofore enjoyed. *Blodgett* v. *Bridgeport City Trust Co.,* 115 Conn. 127, 141, 161 A. 83. A future tax can be measured by a past assessment or by the income of a period which has passed.

*Stockdale* v. *Insurance Companies,* 87 U.S. (20 Wall.) 323, 331, 22 L. Ed. 348; *Brushaber* v. *Union Pac. R. Co.,* 240 U.S. 1, 20, 36 S. Ct. 236, 60 L. Ed. 493; *United States* v. *Hudson,* 299 U.S. 498, 500, 57 S. Ct. 309, 81 L. Ed. 370; *Welch* v. *Henry,* 305 U.S. 134, 146, 59 S. Ct. 121, 83 L. Ed. 87. Under the circumstances of this case, it cannot be said that the plaintiff could not reasonably have anticipated either the nature or the amount of the tax it was expected to pay. *Milliken* v. *United States,* 283 U.S. 15, 22, 24, 51 S. Ct. 324, 75 L. Ed. 809. The retroactive effect of § 896c does not render it unconstitutional.

The plaintiff contends that the Connecticut corporation business tax is unlawfully discriminatory. It argues that commercial corporations can deduct the cost of the goods they sell, while savings and loan associations are taxed upon dividends which they must pay to obtain deposits, which are, in effect, the stock in trade with which they do business. The plaintiff urges, further, that electric cooperatives and credit unions are exempt from the tax. General Statutes § 5349; Cum. Sup. 1953, § 883c (2); Int. Rev. Code of 1954, § 501(c)(14). The legislature has a wide discretion in the classification of property for taxation and in granting exemptions. *New Haven Metal & Heating Supply Co.* v. *Danaher,* 128 Conn. 213, 219, 21 A.2d 383. The classification must be reasonable and not arbitrary and must be based upon a distinction which bears a fair and substantial relation to the object of the legislation so that all who are similarly situated are treated alike. *Spector Motor Service, Inc.* v. *Walsh,* 135 Conn. 37, 64, 61 A.2d 89; *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989. This test is adequately met in the case at bar.

The plaintiff claims that it is an instrumentality of the federal government and cannot be taxed except as the Congress consents. *First National Bank & Trust Co.* v. *West Haven,* 135 Conn. 191, 192, 62 A.2d 671. In the case at bar that consent is limited to a state tax on income which is no greater than that imposed on other similar local mutual or co-operative thrift and home financing institutions. 48 Stat. 133, as amended, 12 U.S.C. § 1464(h). Section 397b of the 1951 Cumulative Supplement (as amended, Cum. Sup. 1953, § 883c) imposes this tax upon "[e]very mutual savings bank, savings and loan association and building and loan association doing business in this state." The plaintiff falls squarely into this group. Then too, if we were to hold that federally incorporated savings and loan associations did not fall into the classification of organizations which are taxed under § 397b, we would be adopting a construction of that section discriminatory as to state incorporated savings and loan associations. It is true, as the plaintiff points out, that electric co-operatives and credit unions are not subject to the tax. It could not reasonably be said, however, that the plaintiff should be classified with them.

The plaintiff attacks the constitutionality of the corporation business tax law on the ground that it is an unlawful delegation of legislative power to the federal government. The plaintiff points out that § 396b of the 1951 Cumulative Supplement (as amended, Cum. Sup. 1953, § 882c) accepts the definition of gross income "as defined in the federal corporation net income tax law in force on the last day of the income year"; that § 397b(2) (as amended, § 883c [2]) grants exemption to "companies exempt by federal law or by the regulations of the

bureau of internal revenue from the federal corporation net income tax," and that § 886c prescribes that, to determine taxable net income, deductions from gross income shall be allowed, with certain exceptions, according to the federal law effective at the end of the income year. This is not a delegation of legislative power but an incorporation by reference of the federal law into the state law. State law lays a tax on the franchise or privilege of a corporation to do business in this state. *Stanley Works* v. *Hackett,* 122 Conn. 547, 551, 190 A. 743; *Spector Motor Service, Inc.* v. *Walsh,* 135 Conn. 37, 49, 61 A.2d 89. The state legislature and not the Congress has selected net earnings as the base for determining the amount of this tax and has fixed the rate to be paid on that tax base. As a matter of convenience to the taxpayer and economy to the state, the legislature has adopted some of the standards employed in the federal corporation net income tax law. *Underwood Typewriter Co.* v. *Chamberlain,* 94 Conn. 47, 65, 108 A. 154, aff'd, 254 U.S. 113, 41 S. Ct. 45, 65 L. Ed. 165.

Section 896c makes dividends nondeductible if the amounts so paid or credited are "withdrawable on demand subject only to customary notice of intention to withdraw." The plaintiff claims that its dividends are not withdrawable subject "only to customary notice of intention to withdraw." Section 9 of the plaintiff's charter requires that dividends on "savings share accounts" be credited on the dividend date. Section 12 permits the holders of "share accounts" to apply for the "repurchase," by the plaintiff, of all or part of their accounts at any time. Written applications for "repurchase" are recorded in the order of filing, and the applicants receive payments of the "repurchase value"

in that order. No shareholder may receive a payment of more than $1000 at any one time. A "share account" is essentially the same as a deposit in a savings bank. Section 5825 of the General Statutes permits savings banks to invoke a similar procedure. It is a matter of common knowledge that shareholders in savings and loan associations as well as depositors in savings banks are usually permitted to withdraw principal or interest at will. It is only in times of threatened heavy withdrawals that provisions such as those described above are enforced. But if savings and loan associations did enforce their charter provisions regarding withdrawals and savings banks did not, it would make no difference. Section 896c uses the term "customary notice of intention to withdraw" with obvious reference to the notice customarily used by savings and loan associations. If the legislature had used the term "statutory notice of withdrawal," it could have meant only the notice provided in § 5825. It used, instead, a general, all-encompassing term. We hold that amounts paid as dividends or interest are "withdrawable on demand subject only to customary notice of intention to withdraw," within the meaning of § 896c.

To questions A, C, D, E and G, we answer "No"; to question B, we answer that § 896c applies to federal savings and loan associations; we decline to answer question F because an answer to it is not necessary to a determination of the issues framed by the pleadings.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.