STATE OF CONNECTICUT *v.* RAYMOND WOODWORTH
ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. PFS-12-7

Argued October 24—decided December 23, 1966

*Harold M. Mulvey,* attorney general, and *Francis J. MacGregor,* assistant attorney general, for the appellant (state).

*Jerome I. Walsh,* of Manchester, for the appellees (defendants).

KOSICKI, J. In compliance with § 17-324, the state, acting through the welfare commissioner, brought a petition to the Circuit Court for a support order. The defendants were alleged to be legally liable under § 17-295 as parents of a mentally retarded child who was a patient in the state training school at Mansfield, a state humane institution. The case was presented on a stipulation of facts, summarized herein.

Peter Woodworth, a son of the defendants, was a patient at the training school from July 27, 1962, through March 31, 1966, which was the last date

included in the billing by the welfare commissioner, as alleged in the amended complaint dated May 16, 1966. The amount accrued between July 27, 1962, and September 30, 1965, at the then maximum rate of $26.95 per week chargeable to legally liable relatives (§ 17-295 [b]) less the amount of $385 paid by the defendants, was $3245.49. It was admitted by the defendants that this amount was due the state, and judgment for the plaintiff to recover this debt was rendered. We need not concern ourselves further with that part of the entire claim.

The sole remaining issue is whether the billing was correct as to the periods October through December, 1965, and January through March, 1966. By Public Acts 1965, No. 594 § 1, effective October 1, 1965, § 17-295 was amended by sharply reducing the maximum rate chargeable to legally liable relatives for the support of mentally retarded patients in a humane institution and by establishing new methods for determining liability for payment. This statute appears as § 17-295 (h) and is printed in the footnote.[1]

---

[1] "Sec. 17-295. SUPPORT IN HUMANE INSTITUTIONS. . . . (h) The maximum rate to be charged for the support of each person who is a patient in a humane institution by reason of being mentally retarded shall be determined according to the following schedule:

| Taxable Income Per Annum of Person Liable for Support | Maximum Monthly Rate of Contribution |
|---|---|
| At least $4,000 but less than $5,000 | $16.00 |
| At least $5,000 but less than $6,000 | $22.40 |
| At least $6,000 but less than $7,000 | $28.80 |
| At least $7,000 but less than $8,000 | $35.20 |
| At least $8,000 but less than $9,000 | $43.20 |
| At least $9,000 but less than $10,000 | $56.00 |
| At least $10,000 but less than $11,000 | $72.00 |
| At least $11,000 but less than $12,000 | $88.00 |
| At least $12,000 | $94.00 |

No person whose taxable income per annum is less than four thousand dollars shall be charged for support under this subsection. As used in this subsection, 'taxable income' means that term as defined for purposes of the federal internal revenue code."

The stipulation discloses that after October 1, 1965, the defendants were relieved of the former charge of $26.95 per week and became subject to the lesser scheduled charges based on their taxable income bracket as defined in § 17-295 (h). Thus, for the last three months of 1965 the maximum monthly rate of contribution would be $35.20; and for the first three months of 1966, the corresponding rate would be $43.20. Section 17-296 provides that "[a]ny person aggrieved by the finding and billing of the commissioner under section 17-295 shall be entitled to a fair hearing in accordance with the provisions of section 17-2a." No such hearing was requested or held.

In its memorandum of decision, the court refers to a regulation of the welfare commissioner prescribing that the "latest income tax return" shall be furnished to him by the liable relative. The court then, in agreement with the defendants' claims in their brief, concludes that "in using the income of the previous year (as the commissioner seeks to do in this case), [the commissioner's regulation] is not relevant to the actual financial income of a liable relative in the current year."

In holding that §§ 17-320 and 17-295 set the standard of legally liable persons as the ability to pay, the court has ignored the 1965 amendment referred to above. Until October 1, 1965, the maximum rate, with certain exceptions not applicable here, chargeable to legally liable relatives of patients cared for in our mental hospitals and state training schools could not exceed $26.95 per week. § 17-295 (b). By the act of 1965, patients in state training schools, under the circumstances here present, were specifically exempt from the operation of § 17-295 (b), and the liability became fixed by the more liberal schedule provided in subsection (h). This obligation,

after October 1, 1965, became determined not on the basis of ability to pay in accordance with a reasonable scale established by the welfare commissioner; § 17-90; but at a rate limited by the taxable income of the legally liable relatives as defined for the purposes of the federal Internal Revenue Code. Taxable income within the intendment of § 17-295 (h) means gross income minus allowable deductions and exemptions. Int. Rev. Code of 1954, § 63. It is evident from the record and briefs that the accounting period selected by the defendants for income tax purposes was the calendar year. This means a period of twelve months, ending on December 31, during which time the taxable income was earned or accumulated. Int. Rev. Code of 1954, § 441. Apparently for at least one year, 1965, a joint income tax return was filed showing a taxable income of $8140.99. See Int. Rev. Code of 1954, § 6013. Mrs. Woodworth, the wife of the named defendant, worked for thirty-three weeks in 1965, contributing $3042 toward the gross income for that year. For the calendar year 1964, the taxable income of the defendants was $7964.19. Under the provisions of § 17-295 (h), the maximum monthly contribution for October, November and December, 1965, was fixed at $35.20, based on the taxable income of 1964, and corresponding payments for the first three months of 1966 were determined by the taxable annual income for 1965. The maximum monthly payments for this period would be $43.20.

It is clear from the foregoing that the defendants, by the legislation of 1965, have been placed in a more favorable classification than they had occupied hitherto. Their obligation has been reduced, on an annual basis, from approximately $1401.40, at the former weekly maximum of $26.95, to a comparable annual payment of $422.40 at the maximum monthly rate of $35.20, or $518.40 at the maximum monthly

rate of $43.20. There is no ambiguity or uncertainty in the language of § 17-295 (h) ; the legislature has made its meaning as plain as can reasonably be expected. *State* v. *Griffiths,* 152 Conn. 48, 58. Federal income tax returns, filed on a calendar year basis, are computed at the end of the taxable year. The welfare commissioner, in arriving at the obligation due from the defendants for the final three months of 1965, correctly used the last preceding return, for the calendar year 1964; and in computing the amount due for the first three months in 1966, properly used the income tax return for 1965. That was the method established by the statute, and the commissioner was under a mandate to follow the procedure which the legislature provided. "Classification and the application of legislation are matters for legislative determination." *State* v. *Gordon,* 143 Conn. 698, 706. "The classification must be reasonable and not arbitrary and must be based upon a distinction which bears a fair and substantial relation to the object of the legislation so that all who are similarly situated are treated alike." *First Federal Savings & Loan Assn.* v. *Connelly,* 142 Conn. 483, 491.

To have adopted the suggested accounting method based on ability to pay not only would be in contravention of the statute but would involve the commissioner in expensive and unnecessary overhead to determine what are hardly more than token contributions toward the vastly larger amounts paid by the state for medical and hospital care, nursing, training programs and the necessities of food, shelter and clothing.

The stipulation was unclear in its statement of the amount owed by the defendants for the six months following September 30, 1965. The total for each of the three-month periods, as stipulated,

differs from the maximum monthly charge scheduled under § 17-295 (h). For this reason, a further hearing is required to determine the exact amount due.

There is error in part, the judgment is affirmed as to the sum of $3245.49 due for arrearages as of September 30, 1965, but is set aside so far as it denies the prayer for an order of payment under subsection (h) of § 17-295, and a new trial is ordered limited to that issue.

In this opinion DEARINGTON and LEVINE, Js., concurred.

